**VIRGINIA:**

In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond, on Friday, the 3rd day of June, 2005.

WILLIAM WILTON MORRISETTE, III,                    Petitioner,

  against       Record No. 040275

WARDEN, SUSSEX I STATE PRISON,                    Respondent.

UPON A PETITION FOR WRIT OF HABEAS CORPUS

In August 2001, a jury in the Circuit Court for the City of

Hampton convicted William Wilton Morrisette, III, of rape and

capital murder during the commission of rape.  Finding that the

Commonwealth had proven beyond a reasonable doubt both

aggravating factors of "future dangerousness" and "vileness,"

see Code § 19.2-264.2, the jury fixed Morrisette's sentence at

death on the capital murder conviction and at life imprisonment

on the rape conviction.  The trial court sentenced Morrisette in

accordance with the jury's verdict.  This Court affirmed the

convictions and the sentence of death.  Morrisette v.

Commonwealth, 264 Va. 386, 400, 569 S.E.2d 47, 56 (2002), cert.

denied, 540 U.S. 1077 (2003).

Pursuant to the provisions of Code § 8.01-654(C),

Morrisette filed a petition for writ of habeas corpus against

the warden of the Sussex I State Prison (Warden). In his

petition, Morrisette raises claims of substantive errors and

claims of ineffective assistance of counsel during the guilt and penalty phases of his trial. The Court will first address Morrisette's claims concerning the guilt phase of his trial. The Court will then address Morrisette's penalty phase claims.

I. GUILT PHASE ISSUES

A. PROCEDURAL DEFAULTS

A petition for writ of habeas corpus is not a substitute for an appeal or a writ of error. Slayton v. Parrigan, 215 Va. 27, 29, 205 S.E.2d 680, 682 (1974), cert. denied, 419 U.S. 1108 (1975); Brooks v. Peyton, 210 Va. 318, 321-22, 171 S.E.2d 243, 246 (1969).

> The trial and appellate procedures in Virginia are
> adequate in meeting procedural requirements to
> adjudicate State and Federal constitutional rights and
> to supply a suitable record for possible habeas corpus
> review. A prisoner is not entitled to use habeas
> corpus to circumvent the trial and appellate processes
> for an inquiry into an alleged non-jurisdictional
> defect of a judgment of conviction.

Slayton, 215 Va. at 30, 205 S.E.2d at 682. Thus, when an issue of an alleged constitutional defect could have been raised and adjudicated at trial and upon appeal to this Court, a petitioner lacks standing to raise the claim in a petition for writ of habeas corpus. Id.

2

In claim I(A),[1] Morrisette alleges the Commonwealth acted with "reckless disregard" of the prejudicial impact that the 19-year delay between the time of the offense in 1980 and his arrest in August 1999 had on his ability to defend against the charges.  In claim III(A), Morrisette alleges the trial court violated Code § 8.01-360 by qualifying a panel of only 22 jurors and granting each side only four peremptory strikes.  Morrisette alleges he was entitled to an additional peremptory strike and that his due process rights were violated.  Morrisette further alleges that this is a "structural error."  In claim V(A), Morrisette alleges he was entitled to an instruction on the lesser-included offense of first-degree murder.  We hold that claims I(A), III(A), and V(A) are procedurally defaulted because these non-jurisdictional issues could have been raised at trial and on direct appeal but were not.  Thus, they are not cognizable in a petition for writ of habeas corpus.  Slayton, 215 Va. at 29, 205 S.E.2d at 682.

In claims II(A) and (B), Morrisette alleges that, "because there was no indictment for the greater offense of death eligible capital murder, the trial court lacked jurisdiction to try petitioner for death eligible capital murder."  Morrisette argues the failure to include aggravating circumstances in the

---

[1] This claim is mislabeled in Morrisette's petition as claim "VI.A."

3

indictment rendered the trial court without jurisdiction over a death eligible capital murder trial. Thus, Morrisette asserts that this challenge to the indictment is not procedurally barred under Slayton, 215 Va. at 29, 205 S.E.2d at 682. We disagree. The failure of an indictment to include aggravating circumstances is not a jurisdictional defect and is waived by the failure to object to the indictment before trial. See Wolfe v. Commonwealth, 265 Va. 193, 223-24, 576 S.E.2d 471, 488-89 (2003); Rule 3A:9(b) and (c). Thus, the rule in Slayton does apply, and this claim is procedurally defaulted because Morrisette failed to raise this non-jurisdictional issue at trial and on direct appeal.

B. SUBSTANTIVE ALLEGATION OF JUROR MISCONDUCT

At trial, Morrisette exercised his Fifth Amendment right against self-incrimination and chose not to testify. The jury was properly instructed that "the defendant does not have to testify and exercise of that right cannot be considered by [the jury]." Morrisette has submitted two juror affidavits, obtained following his direct appeal, wherein the jurors state that they speculated during deliberations as to why Morrisette did not testify. In claim XI(A)(1), Morrisette asserts that his Fifth, Sixth, Eighth, and Fourteenth Amendment rights were violated when the jurors failed to follow the trial court's instructions

4

and improperly considered his failure to testify as evidence of his guilt.

The Court rejects this claim. The Court will not receive testimony of jurors regarding their own alleged misconduct in the jury room for the purpose of impeaching their verdict. See Kasi v. Commonwealth, 256 Va. 407, 425, 508 S.E.2d 57, 67 (1998), cert. denied, 527 U.S. 1038 (1999) ("Virginia has been more careful than most states to protect the inviolability and secrecy of jury deliberations, adhering to the general rule that the testimony of jurors should not be received to impeach their verdict, especially on the ground of their own misconduct."). The Court has generally "limited findings of prejudicial juror misconduct to activities of jurors that occur outside the jury room," Jenkins v. Commonwealth, 244 Va. 445, 460, 423 S.E.2d 360, 370 (1992), and the Court has held that a trial judge is not required to examine jurors in response to allegations of jury misconduct that is confined to the jury room. Id.

C. CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL

In addition to his substantive claims concerning the guilt phase of his trial, Morrisette asserts claims of ineffective assistance of counsel. As with any such claim, the two-part test enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984), frames our analysis. To prevail, Morrisette must first prove that his trial counsel's "performance was deficient." Id.

5

This prong of the test requires a showing that "counsel's representation fell below an objective standard of reasonableness" and that counsel's errors were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687-88. Second, Morrisette must show that the "deficient performance prejudiced the defense," meaning that "counsel's errors were so serious as to deprive the defendant of a fair trial." Id. In other words, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

### 1. Failure to Argue the Theory of Reckless Disregard in Speedy Trial Issue on Appeal

In claims I and I(B),[2] Morrisette alleges he was denied the effective assistance of counsel on appeal because counsel failed to argue that the Commonwealth acted in "reckless disregard" of the probable prejudicial impact of the 19-year pre-indictment delay on his ability to present a defense to the charges.[3]

---

[2] Again, these claims are mislabeled in Morrisette's petition as claims "VI" and "VI.B."

[3] Morrisette included this claim of ineffective assistance of counsel on appeal in his initial petition for writ of habeas corpus filed on February 6, 2004. That petition, however, exceeded the 50-page limit as required by Rule 5:7A(g), and the Court directed him to file an amended petition. In his amended petition, Morrisette added a claim that his trial counsel was ineffective for failing to make this argument. Morrisette filed the amended petition on March 5, 2004, after the applicable

6

This claim has no merit. The selection of issues to address on appeal is left to the discretion of appellate counsel, and counsel need not address every possible issue on appeal. Jones v. Barnes, 463 U.S. 745, 751-52 (1983). Furthermore, as Morrisette concedes, he did not make this specific argument at trial when he challenged the 19-year pre-indictment delay. Therefore, he would have been procedurally barred from raising the argument on appeal. See Rule 5:25. Appellate counsel were not ineffective for failing to present an argument that would have been procedurally defaulted.

### 2. Failure to Argue that the Indictment Did Not Allege Aggravating Factors

In claim II(C), Morrisette asserts counsel should have argued at trial that the indictment failed to allege the aggravating factors and that, if counsel had done so, the issue would have been preserved for appeal and this Court would have vacated his death sentence.

This claim has no merit. Contrary to Morrisette's assertion, there is no constitutional requirement that a capital murder indictment include allegations concerning aggravating factors. See Ring v. Arizona, 536 U.S. 584, 597 n.4 (2002)

statute of limitations had expired. Thus, the added claim is barred pursuant to Code § 8.01-654.1. A claim of ineffective assistance of counsel at trial does not relate back to Morrisette's claim in his initial petition that appellate counsel was ineffective. See Code § 8.01-6.1.

7

(holding that the Fourteenth Amendment has not been construed to include the Fifth Amendment right to "presentment or indictment of a Grand Jury"); <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 477 n.3 (2000); <u>cf.</u> <u>Blakely v. Washington</u>, 542 U.S. 296, ___, 124 S.Ct. 2531, 2537-38 (2004) (holding that a trial judge may not engage in unilateral fact-finding in order to impose a punishment which exceeds the jury's verdict). Furthermore, a defendant charged with capital murder is not entitled to a bill of particulars delineating the Commonwealth's intended aggravating factors when the indictment specifying the crime gives the defendant notice of the nature and character of the offense. <u>Roach v. Commonwealth</u>, 251 Va. 324, 340, 468 S.E.2d 98, 107 (1996). The indictment in this case gave Morrisette such notice.

### 3. Failure to Object to Jury Pool Size and Failure to Demand an Additional Peremptory Strike

The trial court seated a panel of 14 jurors, including two alternate jurors, from a qualified panel of 22 venirepersons. Under Code § 19.2-262(B), a panel of 20 qualified members is required in order to seat a jury of 12 persons. Pursuant to Code § 8.01-360, when a court desires to seat "two or more additional jurors . . . there shall be drawn twice as many venireman as the number of additional jurors desired. The . . . Commonwealth and accused in a criminal case shall each be

8

allowed one additional peremptory challenge for every two additional jurors."

In claim III(B), Morrisette alleges he was denied the effective assistance of counsel because counsel failed to object to the trial court's qualification of a jury panel consisting of less than 24 venirepersons and further failed to demand an additional peremptory strike to which Morrisette alleges he was entitled by law. Morrisette claims that the court's errors were structural and that prejudice is therefore presumed.

A "structural error" is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." Arizona v. Fulminante, 499 U.S. 279, 310 (1991); see Emmett v. Warden, 269 Va. 164, 168, 609 S.E.2d 602, 605 (2005). As such, it is the constitutional magnitude of the error that defies "harmless error review." Neder v. United States, 527 U.S. 1, 8 (1999). Examples of errors which affect the framework of a trial include the denial of a public trial, the denial of counsel, the denial of an impartial trial judge, the systematic exclusion of members of the defendant's race from the grand jury, the infringement upon a defendant's right to represent himself, and the improper instruction to a jury as to reasonable doubt and the burden of proof. See Johnson v. United States, 520 U.S. 461, 466-67 (1997) (discussion of "limited class of cases" in which structural error found); Green v.

9

<u>Young</u>, 264 Va. 604, 611-12, 571 S.E.2d 135, 140 (2002)(holding an instruction stating the jury shall find the defendant guilty if the Commonwealth failed to prove each element beyond a reasonable doubt to be structural error).

In <u>Ross v. Oklahoma</u>, 487 U.S. 81, 88-91 (1988), the United States Supreme Court held that, although a trial court had erred in failing to dismiss a potential juror for cause, the error was harmless because the defendant was able to use a peremptory challenge to rectify the error. The Court noted that the Sixth Amendment requires that an impartial jury be seated, but recognized that "peremptory challenges are not of constitutional dimension" because they are a means to achieving the constitutionally required impartial jury. <u>Id.</u> at 88. The Court held that, although the trial court's error required Ross to use one of his peremptory challenges to ensure an impartial jury was seated, Ross was not deprived "of an impartial jury or of any interest provided by the state." <u>Id.</u> at 91. Thus, the Court holds that the loss of a peremptory challenge is not a "structural error."

In asserting claim III(B), Morrisette relies solely on his argument that prejudice should be presumed. Morrisette has not attempted to demonstrate that the resulting jury was impartial. Thus, the Court further holds that Morrisette has failed to demonstrate a reasonable probability that, but for counsel's

10

failure to object to the trial court's qualification of a panel of 22 jurors and counsel's failure to demand a fifth peremptory strike, the outcome of the proceeding would have been different. See Strickland, 466 U.S. at 687.

### 4. Failure to Present Evidence

In claim IV, Morrisette alleges he was denied the effective assistance of counsel because counsel failed to present evidence that Morrisette and the victim, Dorothy White, had been having "an affair." Relying on affidavits by Patricia Walton, Morrisette's ex-wife; and Randy Rodgers, Morrisette's former employer; Morrisette alleges that counsel should have presented testimony from Walton and Rodgers to show that Morrisette and White had consensual sex at the time of the murder. Despite his defense that he did not commit the murder, Morrisette asserts that, if counsel had presented the testimony of both Walton and Rodgers, the jury would have either acquitted him or convicted him of first-degree murder.

In the affidavits presented by Morrisette, Walton states that Morrisette's mother was afraid that Bill Anthony, who had a relationship with White, was going to hurt Morrisette because Morrisette was also involved in a sexual relationship with White. Walton also states that she saw Morrisette and White together. Rodgers asserts that he could have corroborated the fact that Morrisette had an affair with White because Rodgers

11

had seen Morrisette and White together and because Morrisette told Rodgers that he had slept with White. Rodgers further stated that Morrisette was afraid of Bill Anthony.

Morrisette argues that, if the jury believed he and White had engaged in consensual sex, it would not have convicted Morrisette of capital murder, even if the jury believed he killed her. Morrisette further argues that, if the jury had heard evidence of Bill Anthony's motive to commit the murder, Morrisette would have been acquitted.

Not only do these affidavits contain inadmissible, hearsay testimony, they present evidence that is inconsistent with Morrisette's defense at trial. A few days after the crime was committed, Morrisette told the police he only knew White because he once went to her house with Bill Anthony. Morrisette also gave the police a false alibi for the night of the murder. However, in his 1999 interview with the police, Morrisette denied knowing White and denied having sexual intercourse with her. Thus, it would have been unreasonable for counsel to attempt to assert a defense that Morrisette and White had consensual sexual intercourse because Morrisette asserted an alibi defense and previously stated that he did not know White. A defense based on the affidavits would emphasize that Morrisette lied twice to the police in order to conceal his guilt. Therefore, Morrisette has failed to demonstrate that

counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the outcome of the proceeding would have been different. See Strickland, 466 U.S. at 687.

### 5. Failure to Request a Jury Instruction on First-Degree Murder

In claim V(B), Morrisette alleges he was denied the effective assistance of counsel because counsel failed to request an instruction on the lesser-included offense of first-degree murder. Morrisette alleges he was prejudiced by counsel's failure because the jury could have found that the evidence was either insufficient to prove Morrisette's sexual intercourse with White was nonconsensual or insufficient to prove that the act of sexual intercourse was contemporaneous with the killing of White. Morrisette bases this argument on the evidence that there was no injury to the victim's external genitalia coupled with the presence of his semen.

The defense's theory at trial was that Morrisette did not murder White. Counsel argued during trial that Morrisette "was not involved in the murder" and that "[n]othing in any evidence shows that William Morrisette did the murder." Counsel could not have reasonably argued that Morrisette committed first-degree murder without destroying the stronger argument that Morrisette did not commit the murder. Therefore, Morrisette has

13

failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the outcome of the proceeding would have been different. See Strickland, 466 U.S. at 687.

### 6. Cumulative Nature of Counsel's Errors

In claim VIII, Morrisette asserts the cumulative effect of trial counsel's deficient performance prejudiced him. This claim has no merit. "Having rejected each of petitioner's individual claims, there is no support for the proposition that such actions when considered collectively have deprived petitioner of his constitutional right to effective assistance of counsel." Lenz v. Warden, 267 Va. 318, 340, 593 S.E.2d 292, 305 (2004).

### 7. Failure to Conduct Post-Trial Juror Interviews

In claim XI(A)(2), Morrisette contends that counsel should have interviewed the jurors immediately following the trial and that, if counsel had done so, the interviews would have disclosed the jurors' failure to follow the trial court's instructions regarding Morrisette's decision not to testify. Morrisette asserts he was prejudiced by this failure because it prevented counsel from raising the issue of the jury's misconduct in a post-trial motion and on appeal.

There is no requirement that counsel must interview every juror at the end of a case. Lenz, 267 Va. at 326, 593 S.E.2d at

14

296-97.  Thus, Morrisette has failed to demonstrate that counsel's performance was deficient.  See Strickland, 466 U.S. at 687.

## II. PENALTY PHASE ISSUES

In claim X, Morrisette maintains that his trial counsel were ineffective during the penalty phase of his trial for failing to object to a verdict form that, according to Morrisette, was defective and did not conform to the jury instructions and the law.  The single verdict form provided to the jury during the penalty phase of Morrisette's trial contained the following sentencing options:[4]

> _____  We, the Jury, in the case of Commonwealth v. William Wilton Morrisette, III, having found the defendant guilty of capital murder, and having found after consideration of his history and background that there is a probability that he would commit criminal acts of violence that would constitute a continuing serious threat to society,
>
> and
>
> having unanimously found that his conduct in committing the offense is outrageously or wantonly vile, horrible or inhuman in that it involved torture; depravity of mind; or aggravated battery to the victim beyond the minimum necessary to accomplish the act of

---

[4] In 2003, after this Court's decision in Powell v. Commonwealth, 261 Va. 512, 552 S.E.2d 344 (2001), the General Assembly amended Code § 19.2-264.4(D)(2) to add the option of a life sentence and a monetary fine.  See Acts 2003, chs. 1031 and 1040.  Even though the amendment occurred after Morrisette's trial, the verdict form used in his sentencing proceeding included this option, which was consistent with the provisions of Code § 18.2-10 (monetary limits of fine for conviction of felony).

15

murder and having considered the evidence in mitigation of the offense, unanimously fix his punishment at death.

                            _____
                                   FOREPERSON

OR

\_\_\_\_\_ We, the Jury, in the case of Commonwealth v. William Wilton Morrisette, III, having found the defendant guilty of capital murder and having unanimously found after consideration of his history and background that there is a probability that he would commit criminal acts of violence that would constitute a continuing serious threat to society, and having considered the evidence in mitigation of the offense, unanimously fix his punishment at death.

                            _____
                                   FOREPERSON

OR

\_\_\_\_\_ We, the Jury, in the case of Commonwealth v. William Wilton Morrisette, III, having unanimously found that his conduct in committing the offense is outrageously or wantonly vile, horrible or inhuman in that it involved torture; depravity of mind or aggravated battery to the victim beyond the minimum necessary to accomplish the act of murder and having considered the evidence in mitigation of the offense, unanimously fix his punishment at death.

                            _____
                                   FOREPERSON

OR

\_\_\_\_\_ We, the Jury, in the case of Commonwealth v. William Wilton Morrisette, III, having found the defendant guilty of capital murder and having considered all of the evidence in aggravation and mitigation of such offense, fix his punishment at imprisonment for life.

                            _____
                                   FOREPERSON

_____ We, the Jury, in the case of Commonwealth v. William Wilton Morrisette, III, having found the defendant guilty of capital murder and having considered all of the evidence in aggravation and mitigation of such offense, fix his punishment at imprisonment for life and a fine of $_____ (fine must not be more than $100,000.00).

_____
FOREPERSON

Morrisette contends that the verdict form was defective in two respects. Relying on this Court's decision in Atkins v. Commonwealth, 257 Va. 160, 510 S.E.2d 445 (1999), Morrisette first contends that the verdict form did not comport with the trial court's jury instructions because it failed to include an option requiring the jury to fix his sentence at life imprisonment if it found that the Commonwealth had proven neither aggravating factor beyond a reasonable doubt. Second, Morrisette argues that, based on this Court's decision in Powell v. Commonwealth, 261 Va. 512, 552 S.E.2d 344 (2001), the verdict form failed to give the jury the option of imposing a life sentence even if the jury found that the Commonwealth had proven one or both aggravating factors beyond a reasonable doubt.

Morrisette's first argument is without merit. As the Warden asserts, our decision in Lenz resolves Morrisette's contention that, based on the Atkins decision, the verdict form was defective because it failed to include an option requiring

17

the jury to impose a life sentence if the Commonwealth proved neither aggravating factor beyond a reasonable doubt.  In Lenz, we stated that, if the trial court in Atkins had used the statutory verdict form, see Code § 19.2-264.4(D)(2), the "missing sentencing option would have been submitted to the jury."  267 Va. at 324, 593 S.E.2d at 295.  As in Lenz, the verdict form given to the jury in Morrisette's sentencing proceeding included the language set out in Code § 19.2-264.4(D)(2), which is the sentencing option that was missing in Atkins.  Atkins, 257 Va. at 179, 510 S.E.2d at 457.  Thus, the verdict form in this case did not fail to include the option requiring the imposition of a life sentence with or without a fine if the Commonwealth proved neither aggravating factor beyond a reasonable doubt.

As to Morrisette's second argument, the Warden asserts that the verdict form used in Morrisette's sentencing proceeding is the one mandated by the provisions of Code § 19.2-264.4(D), that it is an accurate and complete statement of the law, and that trial counsel thus could not have been ineffective for failing to object to its use during the sentencing phase of Morrisette's trial.  Continuing, the Warden contends that this Court did not invalidate the statutory verdict form in Powell; that this Court, before Powell, as well as the Supreme Court of the United States, has upheld the use of the statutory verdict form and the

18

parallel jury instructions; and that the General Assembly, in post-Powell legislation, has rejected any changes in the statutory verdict form suggested by our decision in Powell.

The defendant in Powell argued that, during the penalty phase, the trial court erred in giving the jury verdict forms that did not "expressly state[] the jury's option of imposing a life sentence or a life sentence and a fine where the jury found one or both of the aggravating factors to be present."[5]  261 Va.

---

[5] The following four separate verdict forms were used in Powell's sentencing proceeding:

[Powell Verdict Form 1]

> We, the jury, on the issue joined, having found the
> defendant guilty of Capital Murder in the Commission
> of Rape and having unanimously found after
> consideration of his history and background that there
> is a probability that he would commit criminal acts of
> violence that would constitute a continuing serious
> threat to society,
> and
> having unanimously found that his conduct in
> committing the offense is outrageously or wantonly
> vile, horrible or inhuman in that it involved torture,
> depravity of mind, or aggravated battery to the victim
> beyond the minimum necessary to accomplish the act of
> murder and having considered the evidence in
> mitigation of the offense, unanimously fix his
> punishment at death.

> _____
> FOREMAN

[Powell Verdict Form 2]

> We, the jury, on the issue joined, having found
> the defendant guilty of Capital Murder in the
> Commission of Rape and having unanimously found after
> consideration of his history and background that there

19

at 542, 552 S.E.2d at 361.  In response, the Commonwealth asserted that the verdict forms comported with the provisions of Code § 19.2-264.4(D) and that, based on our decision in Roach, the trial court did not err by refusing to substitute an alternative form for the statutory form.  Powell, 261 Va. at 542-43, 552 S.E.2d at 362.

Disagreeing with the Commonwealth, we framed the issue as

---

is a probability that he would commit criminal acts of violence that would constitute a continuing serious threat to society, and having considered the evidence in mitigation of the offense, unanimously fix his punishment at death.

_____
FOREMAN

[Powell Verdict Form 3]

We, the jury, on the issue joined, having found the defendant guilty of Capital Murder in the Commission of Rape and having unanimously found that his conduct in committing the offense is outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or aggravated battery to the victim beyond the minimum necessary to accomplish the act of murder and having considered the evidence in mitigation of the offense, unanimously fix his punishment at death.

_____
FOREMAN

[Powell Verdict Form 4]

We, the jury, on the issue joined, having found the defendant guilty of Capital Murder in the Commission of Rape and having considered all of the evidence in aggravation and mitigation of such offense, fix his punishment at imprisonment for life.

_____
FOREMAN

20

> whether the jury [was] likely to be confused where it [was] instructed that it may impose a sentence other than death if it [found] one or both of the aggravating factors have been proven beyond a reasonable doubt, but receive[d] verdict forms that [did] not expressly state that the jury [was] allowed to fix a sentence of life imprisonment even though one or both aggravating factors [were] present.

Id. at 545, 552 S.E.2d at 363. We concluded that a defendant is entitled to a verdict form "that accurately and expressly correspond[s] to the trial court's sentencing instruction" and that in the penalty phase of a capital murder trial, the trial court must give the jury a verdict form that expressly includes the option for imposing a life sentence or a life sentence and a fine of not more than $100,000 when the jury finds that the Commonwealth has proven one or both aggravating factors beyond a reasonable doubt. Id.

Nevertheless, the Warden contends that the holding in Powell was dictum and contrary to our prior decisions in Mueller v. Commonwealth, 244 Va. 386, 422 S.E.2d 380 (1992), and Roach. The defendants in both of those cases challenged the verdict form used in the respective penalty phase proceedings of their capital murder trials. We found no error in both instances.

Specifically, the defendant in Mueller claimed that the verdict form "did not properly inform [the jury] of the sentencing options" and "influenced the jury to impose the death sentence rather than life imprisonment." 244 Va. at 412, 422 S.E.2d at 396. On brief, the defendant argued that "[i]t would

21

be ludicrous to say that we instructed the jury that it could find aggravating factors and still give a life sentence when the form the jury fills out does not make it appear that this option exists."

The verdict form used in Mueller's sentencing proceeding gave the jury four sentencing options: (1) a sentence of death based on a finding of both aggravating factors; (2) a sentence of death based on a finding of future dangerousness; (3) a sentence of death based on a finding of vileness; and (4) a life sentence based on all of the evidence in aggravation and mitigation of the offense. Id. In addition to the verdict form, the trial court instructed the jury that it could not impose the death penalty unless the Commonwealth proved beyond a reasonable doubt at least one of the aggravating factors and that, even if the Commonwealth did so, the jury was still free to fix the defendant's sentence at life imprisonment. Id. at 412, 422 S.E.2d at 396-97. We concluded the verdict form, in conjunction with the jury instructions, "fully apprised the jury of its sentencing options," did not favor any particular option, and was complete. Id. at 413, 422 S.E.2d at 396-97. While we did not specifically address the provisions of Code § 19.2-

264.4(D), the verdict form used in <u>Mueller</u> followed the

statutory form in effect at that time.[6]

_____

[6] The following verdict form was provided to the jury in <u>Mueller</u>:

ALTERNATIVE JURY VERDICTS

Cross out any paragraph, word or phrase which
you do not find beyond a reasonable doubt

We, the jury, on the issue joined, having found
the defendant guilty of capital murder during the
commission of rape and abduction with the intent to
defile, and having unanimously found after
consideration of his history and background that there
is a probability that he would commit criminal acts of
violence that would constitute a continuing serious
threat to society,

and

having unanimously found that his conduct in
committing the offense is outrageously or wantonly
vile, horrible or inhuman in that it involved torture,
or depravity of mind, or aggravated battery to the
victim beyond the minimum necessary to accomplish the
act of murder, and having considered the evidence in
mitigation of the offense, unanimously fix his
punishment at death.

_____
FOREMAN

OR

We, the jury, on the issue joined, having found
the defendant guilty of capital murder during the
commission of rape and abduction with the intent to
defile, and having unanimously found after
consideration of his history and background that there
is a probability that he would commit criminal acts of
violence that would constitute a continuing serious
threat to society, and having considered the evidence

23

Similarly, in <u>Roach</u>, the defendant argued on brief that the statutory verdict form that the trial court gave the jury was "constitutionally defective" because "the jury never actually received a verdict form option to sentence Roach to life in prison if, despite proof of future dangerousness after weighing this mitigation evidence, fairness and mercy justified this

---

in mitigation of the offense, unanimously fix his punishment at death.

_____
FOREMAN

OR

We, the jury, on the issue joined, having found the defendant guilty of capital murder during the commission of rape and abduction with the intent to defile, and having unanimously found that his conduct in committing the offense is outrageously or wantonly vile, horrible or inhuman in that it involved torture, or depravity of mind, or aggravated battery to the victim beyond the minimum necessary to accomplish the act of murder, and having considered the evidence in mitigation of the offense, unanimously fix his punishment at death.

_____
FOREMAN

OR

We, the jury, on the issue joined, having found the defendant guilty of capital murder during the commission of rape and abduction with the intent to defile, and having considered all of the evidence in aggravation and mitigation of such offense, fix his punishment at imprisonment for life.

_____
FOREMAN

24

result."[7] Roach further asserted that the trial court erred by refusing to give the jury his proposed verdict form that included the specific option allowing the jury to impose a life sentence even if it found that the Commonwealth had proven "future dangerousness" beyond a reasonable doubt. We rejected Roach's arguments. Based on our decisions in Stockton v. Commonwealth, 241 Va. 192, 215, 402 S.E.2d 196, 209 (1991), and LeVasseur v. Commonwealth, 225 Va. 564, 594-95, 304 S.E.2d 644, 661 (1983), we concluded that we had already decided the issue presented.[8] Roach, 251 Va. at 336, 468 S.E.2d at 105. We further held that the trial court did not err by refusing "to substitute Roach's proposed verdict form for the statutory sentencing verdict form."[9] Id.

---

[7] In the penalty phase of Roach's trial, the trial court submitted only the "future dangerousness" predicate to the jury. Roach, 251 Va. at 329, 468 S.E.2d at 101.

[8] In Stockton, we rejected the argument that the "verdict form prescribed by Code § 19.2-264.4(D) and used by the trial court" discouraged the jury from giving proper consideration to mitigating evidence. 241 Va. at 215, 402 S.E.2d at 209. In LeVasseur, the instructions given to the jury during the penalty phase were at issue, not the verdict form. We held that the defendant was not entitled to jury instructions that singled out certain mitigating evidence. 225 Va. at 595, 304 S.E.2d at 661.

[9] The verdict form given to the jury in Roach provided the jury with the following sentencing options:

> We, the jury, on the issue joined, having found the Defendant, guilty of the willful, deliberate, and premeditated killing of a person in the commission of robbery while armed with a deadly weapon, and having unanimously found after consideration of his history

25

While the verdict forms used in Powell, Mueller, and Roach followed the statutory form set out in Code § 19.2-264.4(D), the challenges to the verdict forms in Mueller and Roach did not include an express argument premised on the notion that the sentencing options set forth in a verdict form must explicitly correspond to the trial court's sentencing instructions. That rationale, which we utilized in Atkins and Powell, "flows from

and background that there is a probability that he would commit criminal acts of violence that would constitute a continuing serious threat to society, and having considered the evidence in mitigation of the offense, unanimously fix his punishment at death.

_____
Foreperson

or

We, the jury, on the issue joined, having found the Defendant, guilty of the willful, deliberate, and premeditated killing of a person in the commission of robbery while armed with a deadly weapon, and having considered all of the evidence in aggravation and mitigation of such offense, fix his punishment at imprisonment for life.

_____
Foreperson

or

We, the jury, on the issue joined, having found the Defendant, guilty of the willful, deliberate, and premeditated killing of a person in the commission of robbery while armed with a deadly weapon, and having considered all of the evidence in aggravation and mitigation of such offense, fix his punishment at imprisonment for life and a fine of $_____(fine must not be more than $100,000.00).

_____
Foreperson

26

the principle that 'it is materially vital to the defendant in a criminal case that the jury have a proper verdict form.' " Powell, 261 Va. at 545, 552 S.E.2d at 363 (quoting Atkins, 257 Va. at 178, 510 S.E.2d at 456).  Thus, we were addressing a new issue in Powell.  261 Va. at 542, 552 S.E.2d at 361.  We take this opportunity to reaffirm our holding in Powell and, to the extent, if any, that our holdings in Mueller and Roach are inconsistent with Powell, we overrule those decisions.

Turning to the merits of Morrisette's claim, we find that the verdict form used in Morrisette's sentencing proceeding omitted the same sentencing option as the verdict form at issue in Powell.  Both failed to include express language telling the jury that it may impose a life sentence with or without a fine even if it concluded that the Commonwealth had proven either or both aggravating factors beyond a reasonable doubt.  That conclusion, however, does not end our inquiry.

Because Morrisette is claiming counsel was ineffective for failing to object to the use of the defective verdict form we must determine whether counsel's failure was unreasonable and, if so, whether counsel's error undermines the Court's confidence in the outcome of the proceeding.  As to the "performance" prong of the Strickland test, we hold that the representation provided to Morrisette by his trial counsel "fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.  This

27

Court issued its decision in Powell approximately two months before the commencement of Morrisette's trial.  We succinctly stated our holding in Powell: "in a capital murder . . . trial, the trial court must give the jury verdict forms providing expressly for the imposition of a sentence of imprisonment for life and a fine of not more than $100,000 when the jury finds that one or both of the aggravating factors have been proven beyond a reasonable doubt."  261 Va. at 545, 552 S.E.2d at 363.  In light of that holding, any reasonably competent attorney would have known that it was imperative that he or she object to a verdict form that did not expressly include that sentencing option.  See Green, 264 Va. at 609, 571 S.E.2d at 138 (reasonably competent attorney would have objected to a jury instruction that was clearly erroneous and violated the procedural safeguard requiring the prosecution to prove every element of the charged offense beyond a reasonable doubt).

We also find that trial counsel's deficient performance prejudiced Morrisette's defense.[10]  In both Atkins and Powell, we recognized that a jury is likely to be confused when there is a conflict between the sentencing instructions and the verdict form.  The conflict in this case existed because the jury was

---

[10] We reject Morrisette's argument that the omission in the verdict form constitutes a "structural error" not subject to the prejudice analysis.  See Emmett, 269 Va. at 171, 609 S.E.2d at 607.

instructed that it could sentence Morrisette to life imprisonment with or without a fine even if it found that the Commonwealth had proven one or both aggravating factors beyond a reasonable doubt.  However, the verdict form did not contain a separate paragraph expressly stating that sentencing option.

Thus, we conclude that "there is a reasonable probability that, but for counsel's . . . error[ in failing to object to the incomplete verdict form], the result of the proceeding would have been different," i.e., the jury would not have imposed the death penalty.[11]  Strickland, 466 U.S. at 694.  The implicit jury confusion caused by the conflict between the instructions and the verdict form was "sufficient to undermine confidence in the outcome."  Id.

---

[11]  In contrast to the Court's holding today, we held in Emmett that the petitioner had failed to demonstrate that there was a " 'reasonable probability' " that, but for trial counsel's failure to object to an incomplete verdict form, " 'the result of the proceeding would have been different.' "  269 Va. at 171, 609 S.E.2d at 607 (quoting Strickland, 466 U.S. at 694).  The omission in the verdict form there was different than the one at issue in Morrisette's petition for writ of habeas corpus.  The verdict form used in the penalty phase of Emmett's capital murder trial omitted only the provisions of Code § 19.2-264.4(D)(2).  However, "[b]ecause the jury found that the Commonwealth had proven both aggravating factors beyond a reasonable doubt, it had no reason or occasion to consider the option of a life sentence with or without a fine mandated when the Commonwealth proves neither aggravating factor."  Emmett, 296 Va. at 171, 609 S.E.2d at 607.  Thus, we concluded that Emmett had suffered no prejudice.

29

For these reasons, a limited grant of the writ of habeas corpus shall issue to remand the matter to the Circuit Court for the City of Hampton for a new sentencing hearing.[12]

JUSTICE KINSER, with whom JUSTICE LEMONS and JUSTICE AGEE join, concurring in part and dissenting in part:

I respectfully disagree with the majority's decision to issue a limited grant of the writ of habeas corpus to remand the matter to the circuit court for a new sentencing hearing. In my view, the petitioner, William Wilton Morrisette, III, has not satisfied the "prejudice" prong of the two-part test enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984). In other words, Morrisette has not shown that his trial counsel's alleged error in failing to object to the verdict form at issue was "so serious as to deprive [him] of a fair trial." Id.

In deciding a claim of ineffective assistance of counsel, it is often easier to dispose of the claim by proceeding directly to the question whether the petitioner suffered any prejudice as a result of counsel's alleged deficiencies. Id. at

_____

[12] Because the Court concludes that Morrisette is entitled to a new sentencing hearing, it is not necessary to consider the remaining penalty phase claims. In addition, Morrisette has withdrawn claims XIII (protocol for lethal injection violates the United States and Virginia constitutional prohibitions against cruel and unusual punishment) and XIV (execution by electrocution violates the United States and Virginia

697. If a petitioner makes "an insufficient showing on one [component of the inquiry]," it is not necessary to address both prongs of the Strickland test. Id. I find that to be true in this case. Thus, I follow that course and address only the prejudice prong.

In order to establish that counsel's alleged deficiency prejudiced his defense, Morrisette has to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." Id. at 696. Counsel's alleged error in this case must have been so serious "as to deprive [Morrisette] of a fair trial, a trial whose result is reliable." Id. at 687.

> [T]he right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.

United States v. Cronic, 466 U.S. 648, 658 (1984); accord Lockhart v. Fretwell, 506 U.S. 364, 368 (1993).

---

constitutional prohibitions against cruel and unusual punishment).

31

Morrisette challenges the verdict form used in the penalty phase of his trial on the basis that it did not include an express option allowing the imposition of a life sentence with or without a fine even if the jury found that the Commonwealth had proven one or both aggravating factors beyond a reasonable doubt. This challenge focuses on an alleged omission in the verdict form. Morrisette does not claim that the verdict form contained an erroneous statement of law as to the jury's sentencing options. See Henderson v. Kibbe, 431 U.S. 145, 155 (1977) ("[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law").

In assessing whether Morrisette was prejudiced by this omission, the verdict form should not be looked at in isolation but rather as part of the overall instructions given to the jury during the penalty proceeding. See Boyde v. California, 494 U.S. 370, 378 (1990) (a jury instruction should not be viewed in isolation but should be examined in the context of the entire charge to the jury). Furthermore, in Atkins v. Commonwealth, 257 Va. 160, 177 n.8, 510 S.E.2d 445, 456 n.8 (1999), we stated that, in the context presented there, "the term 'instruction' is sufficiently broad to cover any statement of the law given by the trial court to the jury, which would necessarily include the written verdict form required by Code § 19.2-264.4(D)."

32

Looking not just at the verdict form but also at the jury instructions, I find crucial in applying the Strickland prejudicial analysis to Morrisette's claim the fact that the trial court correctly instructed the jury about all of its sentencing options and Morrisette does not claim otherwise. That instruction stated:

> You have convicted the defendant of an offense which may be punishable by death. You must decide whether the defendant shall be sentenced to death or to imprisonment for life and a fine of a specific amount, but not more than $100,000.00. Before the penalty can be fixed at death, the Commonwealth must prove beyond a reasonable doubt at least one of the following aggravating circumstances:
> (1) That, after consideration of his history and background, there is a probability that he would commit criminal acts of violence that would constitute a continuing serious threat to society; or
> (2) That his conduct in committing the offense was outrageously or wantonly vile, horrible or inhuman, in that it involved torture, depravity of mind or aggravated battery to the victim beyond the minimum necessary to accomplish the act of murder.
>
> If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt either of these circumstances, then you may fix the punishment of the defendant at death. But if you nevertheless believe from all the evidence, including evidence in mitigation, that the death penalty is not justified, then you shall fix the punishment of the defendant at:
> (1) Imprisonment for life; or
> (2) Imprisonment for life and a fine of a specific amount, but not more than $100,000.00.

33

> If the Commonwealth has failed to prove beyond a reasonable doubt at least one of these circumstances, then you shall fix the punishment at:
> (1)   Imprisonment for life; or
> (2)   Imprisonment for life and a fine of a specific amount, but not more than $100,000.00.
> Any decision you make regarding punishment must be unanimous.

Armed with this correct statement of law along with the penalty phase verdict form, a reasonable jury could not have misunderstood its sentencing options.  See Francis v. Franklin, 471 U.S. 307, 315 (1985) ("'whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction'") (quoting Sandstrom v. Montana, 442 U.S. 510, 514 (1979)).  In other words, there is not a reasonable probability that the jury would have voted to impose a life sentence or a life sentence with a fine after finding both aggravating factors but failed to do so because the verdict form did not expressly set out an option with that particular language.  The jury was clearly instructed that, if it found the Commonwealth had proven either of the aggravating factors beyond a reasonable doubt, it "may" fix punishment at death; but that, if it nevertheless believed from all the evidence, including evidence in mitigation, the death penalty was not justified, it "shall fix" punishment at life imprisonment or life imprisonment and a fine.  This language juxtaposed with the verdict form that expressly, in a

34

separate paragraph, provided the option of fixing punishment at life imprisonment or life imprisonment and a fine "after having considered all of the evidence in aggravation and mitigation" was not confusing. Nor was there a conflict between the verdict form and the trial court's instructions.

In short, the jury was instructed that, even if it found one or both aggravating factors, it could sentence Morrisette to life imprisonment or life imprisonment and a fine if it believed, after considering all the evidence including mitigation evidence, that the death penalty was not justified. The final two paragraphs of the verdict form provided the jury with the means to effect such a finding, but the jury instead chose to fix Morrisette's sentence at death.

Thus, I conclude that Morrisette has not carried his burden of demonstrating that counsel's alleged error was "so serious as to deprive [him] of a fair trial." Strickland, 466 U.S. at 687; cf. Henderson, 431 U.S. at 154 (burden of showing that an erroneous instruction was so prejudicial as to support collateral attack on defendant's conviction is greater than burden to show plain error on direct appeal); Jenkins v. Commonwealth, 254 Va. 333, 336 n.4, 492 S.E.2d 131, 132 n.4 (1997) (noting different standard for collateral review of constitutional error). The result of Morrisette's sentencing proceeding was not unreliable. See Strickland, 466 U.S. at 696.

For these reasons, I respectfully concur, in part, and dissent, in part, and would dismiss Morrisette's petition for writ of habeas corpus.

This order shall be published in the Virginia Reports.

The Clerk of this Court shall certify copies of this order to counsel for the petitioner, to the respondent, to the Clerk of the Circuit Court of the City of Hampton, and to the Attorney General of Virginia, which certification shall have the same force and effect as if a writ of habeas corpus were formally issued and served.

A Copy,

Teste:

Patricia L. Harrington, Clerk