Present: Kinser, C.J., Lemons, Goodwyn, Millette, McClanahan, and Powell, JJ., and Koontz, S.J.

REGINALD SHELLMAN

v.  Record No. 120261

OPINION BY
SENIOR JUSTICE LAWRENCE L. KOONTZ, JR.
November 1, 2012

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Marcus D. Williams, Judge

In this appeal, we consider whether Code § 37.2-910(A), which permits the annual hearing to assess the need for secure inpatient treatment for a respondent previously determined to be a sexually violent predator to "be conducted using a two-way electronic video and audio communication system," conflicts with the respondent's due process and statutory rights. We also consider whether in this particular case the order determining that the respondent remained a sexually violent predator in need of secure inpatient treatment accurately reflects the findings of the circuit court.

BACKGROUND

Reginald Shellman was convicted of aggravated sexual battery in the Circuit Court of Fairfax County on February 21, 2001. Prior to his scheduled release from his term of incarceration for this offense on July 15, 2009, the Department of Corrections determined that Shellman qualified for review as a potential sexually violent predator and

referred these findings to the Commitment Review Committee, which subsequently referred the matter to the Office of the Attorney General.  Code §§ 37.2-903 to 37.2-905.

On June 1, 2009, the Commonwealth filed a petition in the Circuit Court of Fairfax County seeking to have Shellman civilly committed as a sexually violent predator.  Following the mandated procedures of Code §§ 37.2-906 to 37.2-908, a probable cause hearing and trial were conducted, following which the circuit court, in an order dated March 23, 2010, determined that Shellman met the criteria for being a sexually violent predator.  The court further determined that there was no suitable alternative to secure inpatient treatment and ordered that Shellman be committed to the custody of the Department of Behavioral Health and Development Services.  In the commitment order, the court scheduled an annual assessment hearing of Shellman's status, pursuant to Code § 37.2-910, for March 7, 2011.

For procedural reasons, including the court-approved withdrawal from the case of Shellman's original counsel, the assessment hearing was delayed from its initial date multiple times.  In an order dated June 21, 2011, the circuit court, noting Shellman's objection, indicated that when held, "in accordance with Code § 37.2-910(A)" the assessment review hearing would "if practicable, be conducted by two-way

2

electronic video and audio communications."  The order further stated that Shellman's new counsel could file a further objection to conducting the hearing by video conference, if desired.

On September 20, 2011, Shellman's counsel filed a motion requesting that Shellman be permitted to attend the assessment hearing in person.  Shellman contended that appearing by video conference rather than being physically present in the same room during the hearing "stifles [private] communication between the client and counsel," because the procedure for permitting such communication was cumbersome.  Shellman further contended that "[w]hen there is not adequate communication between the client and counsel during the hearing [a respondent] is denied his right to effective assistance of counsel, his right to be heard, [and] his right to cross-examine and present evidence."  Thus, Shellman asserted that the "whenever practicable" standard of Code § 37.2-910(A) is unconstitutional because it is never practicable to conduct a hearing by video conference without violating a respondent's due process rights.

The Commonwealth opposed Shellman's motion to attend the hearing, contending that "[a]ll the process due to Shellman at his annual review hearing can be adequately provided while he participates by video[ ]conference.  He can see, hear, and

confront the witnesses against him, participate in person to an appropriate extent, and confer privately with counsel upon simple request."

Shellman's assessment hearing was held on October 26, 2011. Present in the circuit courtroom along with the trial judge were counsel for the Commonwealth, Shellman's counsel, and Shellman's mother. Shellman appeared by video conference from the Virginia Center for Behavioral Rehabilitation in Burkeville (Burkeville Center), where Dr. Mario Dennis, a clinical psychologist and Director of Forensic Services at Burkeville Center, was also present as a witness for the Commonwealth. At the outset of the hearing, Shellman's counsel noted that the circuit court had denied the motion for Shellman to be physically present at the hearing and noted an objection to that ruling.[1]

During the course of the hearing, minor issues occurred with the video conference system in regard to sound quality. At one point, the video feed was lost both in the courtroom and at Burkeville Center, and the hearing had to be suspended for a short time while the connection was reestablished. However, at no time during the hearing did Shellman or his

---

[1] The record does not indicate in what manner the circuit court initially communicated the denial of the motion to Shellman's counsel; however, this ruling was subsequently memorialized in an order entered November 2, 2011.

counsel indicate that they could not follow the proceedings, nor was any request made for a private communication to be made between them.

At the conclusion of the hearing, the circuit court found that Shellman remained a sexually violent predator, and further ruled that he should remain in secure inpatient treatment. The court confirmed this ruling in an order dated November 1, 2011, finding that Shellman's "mental abnormalities and personality disorder have not so changed that he no longer presents an undue risk to public safety, and he thus remains a sexually violent predator." Shellman's counsel endorsed the order as "[s]een and exceptions noted as stated in the record." This appeal followed.

## DISCUSSION

With specific application to the Sexually Violent Predator Act (SVPA), Code §§ 37.2-900 et seq., we have held that "involuntary civil commitment is a significant deprivation of liberty to which federal and state procedural due process protections apply." Jenkins v. Director, Va. Ctr. for Behav. Rehab., 271 Va. 4, 15, 624 S.E.2d 453, 460 (2006). Accordingly, we have recognized that there are "certain minimal standards" to which the Commonwealth is required to adhere in order to afford the "due process guarantee[d] to a respondent in an involuntary civil commitment proceeding."

Id. Chief among these minimal standards is the right to a "hearing at which evidence is presented and the respondent is provided a chance to be heard and to present documentary evidence as well as witnesses." Id. We have further held that "the due process protections embodied in the federal and Virginia Constitutions mandate that the subject of the involuntary civil commitment process has the right to counsel at all significant stages of the judicial proceedings." Id. at 16, 624 S.E.2d at 460. Without question, the mandatory annual assessment to determine a respondent's continued need for secure inpatient treatment is a significant stage of the judicial proceedings relevant to the respondent's liberty interests.

Likewise, the SVPA contains statutory requirements for the conduct of such hearings. As relevant to this appeal, Code § 37.2-901 provides that

> [i]n hearings . . . held pursuant to [the SVPA], respondents shall have the following rights:
>
>                 . . . .
>
> 2. To be represented by counsel.
>
>                 . . . .
>
> 4. To be present during the hearing or trial.
>
> 5. To present evidence and to cross-examine witnesses.

Code § 37.2-910(A) further provides that "[w]henever practicable, the [annual assessment] hearing . . . shall be conducted using a two-way electronic video and audio communication system that meets the standards set forth in subsection B of [Code] § 19.2-3.1." Code § 19.2-3.1(B) provides, in relevant part, that when any two-way electronic video and audio communication system is used "[t]he persons communicating must [be able to] simultaneously see and speak to one another."

With respect to the standard of review we should apply in this appeal, Shellman contends that by not allowing him to be physically present at the hearing along with counsel, the circuit court created a "structural error" in the proceedings. Thus, Shellman asserts that he need not show actual prejudice resulting from the court's decision that it was practicable for him to appear by video conference, as a structural error in a proceeding "defies harmless error review."

The Commonwealth contends that Shellman does not assert a structural error because he does not allege a complete denial of the right to be present or a complete deprivation of the assistance of counsel. Accordingly, the Commonwealth asserts that Shellman must establish that he was actually prejudiced by not being physically present at the assessment review

hearing such that the outcome of the proceeding would have been different.

In Morrisette v. Warden of the Sussex I State Prison, 270 Va. 188, 613 S.E.2d 551 (2005), we explained that "[a] 'structural error' is a 'defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.' " Id. at 192, 613 S.E.2d at 556 (quoting Arizona v. Fulminante, 499 U.S. 279, 310 (1991)). Based on the record in this case, we hold that Shellman's not being physically present at the hearing did not constitute a structural error in the proceedings. Rather, the use of the video conference was authorized by statute as a proper procedure for conducting the assessment hearing if practicable. Accordingly, we hold that Shellman must show actual prejudice arising from the circuit court's decision to have him appear at the assessment review hearing by video conference.

Shellman further contends that the court's application of Code § 37.2-910(A) would be subject to a de novo review in this Court as a question of statutory construction. However, the language of the statute is in no way ambiguous. A plain reading of the statute makes it clear that the determination of whether it was practicable for Shellman to appear by video conference was a matter committed to the court's sound

8

discretion. Accordingly, we will review Shellman's constitutional claims de novo and the court's decision to conduct the hearing by video conference under an abuse of discretion standard.

On the merits, Shellman contends that by conducting the assessment hearing by video conference rather than permitting Shellman to be physically present in the courtroom, the circuit court violated his due process rights, as well as his statutory rights under Code § 37.2-901,[2] because there was no adequate means for Shellman and his counsel to confer privately during the hearing. Thus, Shellman maintains that he was deprived of his right to competent representation by counsel.

The record indicates that at no point during the hearing did Shellman or his counsel express a desire or need to communicate privately with the other. Shellman recognized in

---

[2] On brief of this appeal, the Commonwealth asserted that Shellman's claim that his statutory rights were violated had been procedurally defaulted because the motion requesting that he be permitted to attend the hearing did not expressly reference the application of Code § 37.2-901. However, with respect to the arguments raised by Shellman in this appeal, the statutory rights he relies upon – the right to be present at the hearing, the right to effective assistance of counsel, and the right to confront and cross-examine witnesses – are concomitant to and subsumed within identical considerations of due process. Thus, for purposes of this appeal, the determination whether the use of the video conference satisfied due process would apply equally to whether it comported with Code § 37.2-901.

9

his motion that any such request would be honored, maintaining only that the manner in which such private communications would occur "stifles communication between the client and counsel." Thus, he contended that "[t]here is no effective way for [a respondent] and his counsel to interact during the course of the proceedings if they are not in the same room." However, Shellman's counsel conceded during oral argument of this appeal that nothing in Code § 19.2-3.1 or Code § 37.2-910 would prohibit a respondent's counsel from joining his client in the video conference facility at Burkeville Center, opining only that it might be inconvenient for counsel to do so or that by not being present in the courtroom, it might inhibit counsel's ability to interact with the judge and the witnesses.

The mere fact that an authorized manner for conducting a proceeding under the SVPA may not provide for optimal circumstances for the respondent and his counsel to communicate privately does not mean that the respondent has been deprived of due process. Rather, the Court must consider whether the limitations of the authorized procedure constitute a fair balance between the rights of the respondent and the interest of the government in conducting the proceeding in an efficient and effective manner.

Previously, we have not been called upon to consider what factors should be used in determining whether conducting a hearing by video conference is "practicable" under Code § 37.2-910(A) or under any similar statutorily authorized proceeding.  See, e.g., Code § 19.2-82(A) (providing for an accused to be brought before a magistrate by video conference).  However, in United States v. Baker, 45 F.3d 837 (4th Cir. 1995), the United States Court of Appeals for the Fourth Circuit addressed the issue in the context of a competency commitment hearing of a prisoner by video conference.  The federal court's discussion of the factors to be considered in balancing the interests of the respondent and the government is instructive for the similar circumstances of this case.  The court first noted that

> [t]he Supreme Court has identified . . . three factors to consider in determining those procedural safeguards due a person whose interests are to be adversely affected by government actions:
>
> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

11

Id. at 843 (quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).

In Baker, the court recognized with regard to the first element of the Mathews balancing test that because the potential "deprivation [of the respondent's liberty] is great . . . the government's interest in conducting the hearings by means of video conferencing technology must be great, and the risk of an erroneous deprivation of liberty small for the government to prevail." Id. at 844. Contrasting a commitment hearing with a criminal trial, where observation of the demeanor of the defendant and the witnesses by the trier of fact is a major concern, the court observed that

> the goal of a commitment hearing is far different: [to determine] whether the respondent is mentally competent. This determination is made by the court and is based primarily upon the opinions of experts proffered by the government and the respondent. The expert opinions will not differ factually but only in their theoretical premises. As a result, to whatever extent the opinions are delivered by way of oral testimony, the court will determine which experts' opinions it finds more persuasive based not upon the demeanor of the experts while testifying, but upon the qualifications of the experts, and the substance and thoroughness of the opinions offered.

Id. at 844-45 (internal citation omitted)

Thus, the court opined that in a civil commitment hearing "[t]he aim of cross-examination is changed accordingly: its goal is not to 'poke holes' in the testimony of a witness, but to test the expert opinion given and determine its basis and

its limits." Id. at 845. The court concluded that under the second element of the Mathews test use of video conferencing technology "runs far less risk of erroneous deprivation of liberty [to the respondent in a commitment hearing] than would affording similarly limited rights to criminal defendants." Id.

Applying the third element of the Mathews balancing test that "fiscal and administrative concerns [of the government] are properly taken into account," the court concluded that given the expense and security concerns related to the transportation of respondents to court, "the government interests in the use of the video conference technology at civil commitment hearings are both apparent and substantial." Id. at 847. Thus, the court held that "in light of the slight risk of erroneous committal and the substantial government interests," conducting a commitment hearing by video conference did not violate considerations of constitutional due process. Id.

We find the reasoning of Baker to be persuasive and applicable to the present case. Unlike the initial trial in which a respondent is determined to be a sexually violent predator, the purpose of the annual assessment hearing is to determine whether, in light of the treatment received in the preceding year, the respondent remains a sexually violent

13

predator and, if so, whether there is a less restrictive alternative to continued secure inpatient treatment.  These matters are almost entirely to be determined by the court through consideration of expert opinion.  To the extent that the circumstances of a community-based treatment plan must be evaluated in part through lay witness testimony, the credibility of the witnesses would not be a significant factor in determining the appropriateness of the plan.  Accordingly, we hold that the provision in Code § 37.2-910(A) for conducting annual assessment hearings under the SVPA by video conference is neither unconstitutional facially nor unconstitutional as applied in Shellman's case.

Shellman further contends that even if conducting an assessment hearing by video conference is constitutionally permissible, the manner in which his hearing was conducted interfered with the ability of his counsel to provide effective representation and that "technical problems [with the video conference] made the situation even worse."  While conceding that the circuit court "[made] a good[]faith effort" to provide a consistent quality of audio and video reception and transmission, he contends that the record shows that technical problems effectively negated the requirement of Code § 19.2-3.1 of the parties "seeing and speaking to one another[] from being fully implemented," impairing his right

to counsel and to confront the Commonwealth's witness in violation of his rights afforded by Code § 37.2-901.

The "technical problems" which Shellman alludes to in almost every instance did not involve problems with the video conferencing equipment itself.  Rather, as the record plainly demonstrates, it was merely a question of whether the participants were sufficiently close to the microphones so that their voices would register on the audio feed, and that the inability of the parties to hear one another was immediately rectified.  In the one instance where the video feed actually failed, the record shows that the problem was immediately noted and that the proceedings were suspended until the problem was corrected.  Thus, at no point material to the proceedings were the parties prevented from seeing and speaking to one another.

The record in this case amply demonstrates that Shellman and his counsel were able to participate fully in the proceedings, including the ability to see and hear the judge, opposing counsel, and the witnesses and to cross-examine Dr. Dennis.  Moreover, in the absence of any evidence that Shellman and his counsel sought to communicate privately or that such a request would not have been honored, we conclude that use of the video conference procedure resulted in no detrimental effect on the ability of counsel to provide

15

Shellman with competent representation.  Thus, we hold that Shellman has not demonstrated he was deprived of any statutory right afforded him under the SVPA.

Shellman further contends that even if the use of the video conference did not violate his statutory and due process rights, it was nonetheless not "practicable" for him to appear by video conference where he had made an express request to be physically present.  In effect, he contends that the right to be present at the hearing cannot be satisfied by an appearance through a video conference if the respondent objects to that process and asserts the right to "be present during the hearing," provided by Code § 37.2-901(4), because that right is in conflict with the "practicability" of conducting the hearing by video conference permitted by Code § 37.2-910(A). Thus, Shellman contends that the circuit court abused its discretion as a matter of law in denying his motion to be physically present at the assessment hearing.  There is no merit to this contention.

"[W]hen two statutes seemingly conflict, they should be harmonized, if at all possible, to give effect to both." Commonwealth v. Zamani, 256 Va. 391, 395, 507 S.E.2d 608, 609 (1998); see also Gilman v. Commonwealth, 275 Va. 222, 230, 657 S.E.2d 474, 477 (2008).  A plain reading of the two statutes at issue here, however, shows that Code § 37.2-901(4) and Code

16

§ 37.2-910(A) are not in conflict.  Rather, it is apparent that by providing for the conduct of an assessment hearing by video conference "[w]henever practicable," the General Assembly intended for this procedure to satisfy the requirement of Code § 37.2-901(4) because the respondent would "be present during the hearing" by video conference.  There being no conflict in the two statutes, and no evidence in the record that the conduct of the hearing by video conference was impracticable, we hold that the circuit court did not abuse its discretion in denying Shellman's motion to be physically present at the hearing.[3]

Finally, Shellman contends that the recommitment order entered by the circuit court on November 1, 2011 was erroneous in that it recited that Shellman suffered from "mental abnormalities and [a] personality disorder" (emphasis added), whereas Dr. Dennis opined that Shellman's status as a sexually violent predator was based solely on the "mental abnormality" of pedophilia and not that Shellman suffered from any "personality disorder."  On brief, the Commonwealth concedes that no evidence was offered to show that Shellman suffers

---

[3] Because we find the circuit court did not commit error in conducting the assessment hearing by video conference, it is unnecessary for us to address the Commonwealth's argument that Shellman has not demonstrated prejudice arising from the manner in which the hearing was conducted.

from a "personality disorder" that contributes to his inability to control his predatory behavior. However, the Commonwealth contends that the court's summation of the evidence clearly shows that it relied solely on Dr. Dennis' testimony concerning Shellman's pedophilia in concluding that Shellman met the criteria of a sexually violent predator. In sum, the Commonwealth contends that the additional language of the recommitment order may be viewed as surplusage or a scrivener's error, and its mistaken inclusion does not constitute a reversible error as the record as a whole shows that Shellman received a fair hearing on the merits and substantial justice has been reached. Code § 8.01-678. We agree.

The language of the November 1, 2011 order essentially tracks statutory criteria for determining whether a respondent is a sexually violent predator. However, it is not necessary for the trier of fact in an SVPA proceeding to find that the respondent suffers from both a mental abnormality <u>and</u> a personality disorder which makes it difficult for him to control his predatory behavior. As the record in this case demonstrates that the circuit court limited its consideration of Shellman's status as a sexually violent predator to Dr. Dennis' testimony concerning Shellman's mental abnormality as a pedophile, we hold that the mistaken inclusion of the

18

additional language in the final order does not constitute reversible error.  However, in order that the record may "speak the truth," see Jefferson v. Commonwealth, 269 Va. 136, 140, 607 S.E.2d 107, 110 (2005), we will remand the case so that the surplus language, "and a personality disorder," may be struck from the order nunc pro tunc.  Code § 8.01-428(B).

CONCLUSION

For these reasons, we will affirm the judgment of the circuit court that Shellman remains a sexually violent predator in need of secure inpatient treatment, and we will remand the case for correction of the final order as indicated herein.

Affirmed and remanded.