**VIRGINIA:**

In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond, on Tuesday, the 8th day of November, 2005.

Paul Warner Powell,                                              Petitioner,

　　　against　　　　　　Record No. 042716

Warden of the Sussex I
 State Prison,                                                    Respondent.

Upon a Petition for a Writ of Habeas Corpus

Upon consideration of the petition for a writ of habeas corpus filed December 27, 2004, and the respondent's motion to dismiss, the Court is of the opinion that the motion should be granted and the writ should not issue.

Petitioner, Paul Warner Powell, was originally convicted in the Circuit Court of Prince William County of the capital murder of Stacey Lynn Reed, abduction, rape of Stacey's younger sister, Kristie Reed, and attempted capital murder of Kristie Reed. The jury fixed petitioner's sentence at death for the capital murder conviction and three terms of life imprisonment and fines totaling $200,000 for the remaining convictions. Upon review of the capital murder conviction and the death sentence imposed upon petitioner, this Court reversed the capital murder conviction upon a finding that the indictment charging petitioner with capital murder in the commission of robbery and/or attempted robbery had been improperly amended to include a charge of capital murder "during the commission of or subsequent to rape and/or attempted rape and/or sodomy and/or

attempted sodomy."  Powell v. Commonwealth, 261 Va. 512, 532, 552 S.E.2d 344, 355-56 (2001) ("Powell I").  This Court reversed petitioner's conviction for capital murder, affirmed the remaining convictions, and remanded the case "for a new trial on a charge of no greater than first degree murder for the killing of Stacey Reed, if the Commonwealth be so advised."  Id. at 546, 552 S.E.2d at 363.

After the opinion issued and petitioner had been indicted for first-degree murder, petitioner wrote a letter to the Commonwealth's Attorney in which petitioner described how he had attempted to rape Stacey Reed before he murdered her.  Based on this new evidence, the Commonwealth moved to enter a nolle prosequi of the indictment in the remanded case, and sought a new indictment against petitioner for capital murder.  On December 3, 2001, the grand jury returned an indictment charging petitioner with the capital murder of "Stacey Lynn Reed during the commission of or subsequent to the attempted rape of Stacey Lynn Reed."

Apart from the new evidence of petitioner's October 21, 2001 letter to the Commonwealth's Attorney in which petitioner confessed to the attempted rape of Stacey, the evidence presented during the guilt-determination phase of petitioner's second trial was not markedly different from that received during the first trial.  The jury found petitioner guilty of capital murder and fixed his sentence at death, finding both aggravating factors of future dangerousness and vileness.  The trial court confirmed the jury's sentence of death.  This Court affirmed petitioner's conviction and approved the sentence of death in Powell v. Commonwealth, 267 Va. 107, 590 S.E.2d 537 (2004), cert. denied, __ U.S. __, 125 S.Ct. 86

2

(2004) ("Powell II").

Procedural Defaults

"A petition for writ of habeas corpus is not a substitute for an appeal or a writ of error." Morrisette v. Warden, 270 Va. 188, ___, 613 S.E.2d 551, 554 (2005) (citing Slayton v. Parrigan, 215 Va. 27, 29, 205 S.E.2d 680, 682 (1974), cert. denied, 419 U.S. 1108 (1975); Brooks v. Peyton, 210 Va. 318, 321-22, 171 S.E.2d 243, 246 (1969)). Further, claims that have been previously raised and decided at trial and on direct appeal are not cognizable in a petition for writ of habeas corpus. Henry v. Warden, 265 Va. 246, 249, 576 S.E.2d 495, 496 (2003).

In claim I(A), petitioner alleges that the Commonwealth violated his right against double jeopardy by trying him twice for the same offense. In the first portion of claim I(B), petitioner alleges that the prosecutor's animosity towards him demonstrates that petitioner's due process rights were violated and he was tried a second time for capital murder because of prosecutorial vindictiveness. In claim II(D), petitioner alleges that the Commonwealth violated his right to counsel by eliciting incriminating statements from him on November 2, 2001 while petitioner was still represented by the attorney who had been appointed to represent petitioner in his previous trial. In claim IV(C), petitioner alleges that his due process rights and right to a reliable sentencing proceeding were violated by the trial court's vague vileness jury instruction.

The Court holds that claims I(A), II(D), IV(C), and the first

portion of I(B) are barred because these issues were raised and decided in the trial court and on direct appeal from the criminal conviction and, therefore, they cannot be raised on habeas corpus. Henry, 265 Va. at 249, 576 S.E.2d at 496.

In the second portion of claim I(B), petitioner alleges, for the first time, that because the prosecutor sought a capital murder charge after the petitioner had been successful on appeal, there is a "presumption" that his second trial for capital murder was the result of prosecutorial vindictiveness. In claim I(C), petitioner alleges that his subsequent trial violated "the collateral estoppel component of the Double Jeopardy Clause" and violated petitioner's right against double jeopardy.

In claim II(A), petitioner alleges the Commonwealth violated his constitutional rights by taking statements from petitioner on January 30 and 31, 1999 without obtaining a waiver of petitioner's Sixth Amendment right to counsel. Petitioner claims that his right to counsel had attached because a magistrate had issued a warrant for his arrest. In claim II(B), petitioner alleges that his subsequent statements on February 4, 1999 were unconstitutionally obtained as they were "fruits of the poisonous tree" as a result of the Commonwealth illegally obtaining his January 30 and 31, 1999 statements. In claim II(C), petitioner alleges his February 4, 1999 statements were "per se invalid" as the police elicited the statements from him without counsel being present even though petitioner had requested counsel and counsel had been appointed on February 1, 1999.

In claim II(E), petitioner alleges that the Commonwealth

4

violated his right to counsel by scheduling the November 2, 2001 interview before petitioner was formally indicted on December 3, 2001.  In claim II(F), petitioner alleges that the prosecution "unconstitutionally and unethically" communicated to him through the police interview on November 2, 2001, violated Rules of Professional Conduct 4.2 and 5.3, interfered with petitioner's relationship with counsel, and violated his right to counsel.  In claim II(G), petitioner alleges his Fourth and Fifth Amendment rights were violated as petitioner's waiver of his Miranda rights on November 2, 2001, was involuntarily given.

In claim III(A), petitioner alleges that the remarks made by the Commonwealth's Attorney in opening and closing arguments violated his rights under the Fifth, Eight, and Fourteenth Amendments as the "remarks vouched for the personal opinions of the prosecutors that [petitioner] deserved the death penalty."  In claim III(B), petitioner alleges that remarks made by the Commonwealth's Attorney in the penalty phase of the trial regarding the effect of the death penalty in deterring other people from committing future crimes violated his Fifth, Eighth, and Fourteenth Amendments rights.

In claim IV(A), petitioner alleges he was unconstitutionally prosecuted because the indictment against him was deficient as it did not allege either vileness or future dangerousness and neither factor was proven beyond a reasonable doubt at trial.  In claim IV(B), petitioner alleges that the Commonwealth was collaterally estopped from presenting the issue of future dangerousness at his second trial because the jury at petitioner's first trial returned a finding only of vileness.

5

In claim IV(D), petitioner alleges that his constitutional rights were violated by the vague jury instruction on future dangerousness. In claim IV(E), petitioner alleges that the jury instruction on future dangerousness unconstitutionally "relieved the Commonwealth of its burden to prove every element beyond a reasonable doubt" because it told the jury that it only had to find a "probability" of future dangerousness. In claim IV(F), petitioner alleges that his due process rights and right to a reliable sentencing proceeding were violated because the future dangerousness aggravating factor excludes consideration of petitioner's life in prison.

In claim V(A), petitioner alleges that his right to due process, his right to be able to participate in his trial, and his right to "heightened reliability" in his trial were violated by the medication administered to him in prison before trial and the stun belt he wore at trial.

In claim VI(A), petitioner alleges that his rights to due process and a reliable sentencing hearing were violated when the Commonwealth knowingly introduced Exhibit 51 as evidence of his criminal history at the penalty phase of the trial. In claim VI(B), petitioner alleges that the Commonwealth violated his due process rights by failing to inform petitioner that "some of the entries on Commonwealth Exhibit 51 were false and misleading." In a portion of claim VI(C), petitioner alleges that the Commonwealth violated Code §§ 19.2-295.1, -264.2, and -264.4 because Exhibit 51 was not a "record of convictions" and listed charges which had been either nolle prossed or of which petitioner was found not guilty. In

another portion of claim VI(C), petitioner alleges that the Commonwealth violated Code § 19.2-264.3:2 because the Commonwealth failed to give notice of its intent to present evidence of unadjudicated criminal conduct. In claim VI(D), petitioner alleges the Commonwealth violated his Sixth Amendment rights when it introduced Exhibit 51 because there was no "foundational testimony as to the personal knowledge of the record-keeper, the regularity of its preparation, the reliance on the records, or any other circumstance showing trustworthiness."

In claim VII(A), petitioner alleges that his constitutional rights to freedom of speech, freedom of association, due process and "to a reliable individualized sentencing determination" were violated by the Commonwealth's introduction of racist statements and documents that linked petitioner to certain groups and "broad ideas." In claim VII(B), petitioner alleges that the Commonwealth violated his right to confront and cross-examine witnesses when it introduced certificates of analysis in an attempt to authenticate several letters allegedly written by petitioner. In claim X(A), petitioner claims the trial court violated his rights under the Fifth and Fourteenth Amendments as well as under Code § 19.2-298 when it failed to allow petitioner to allocute before he was sentenced.

The Court holds that the second portion of claim I(B) and claims I(C), II(A), II(B), II(C), II(E), II(F), II(G), III(A), III(B), IV(A)[1], IV(B), IV(D), IV(E), IV(F), V(A), VI(A), VI(B),

---

[1] See Wolfe v. Commonwealth, 265 Va. 193, 223-24, 576 S.E.2d 471, 488-89 (2003) (failure to include aggravating factors in an

7

VI(C), VI(D), VII(A), VII(B) and X(A) are procedurally defaulted because these non-jurisdictional issues could have been raised at trial and on direct appeal and, thus, are not cognizable in a petition for a writ of habeas corpus. Parrigan, 215 Va. at 29, 205 S.E.2d at 682.

### Claims of Ineffective Assistance of Counsel

In a portion of claim I(D)(1), petitioner alleges he was denied the effective assistance of counsel at trial because counsel failed to raise the issues stated in claim I(A) and the first portion of claim I(B). The Court holds that this portion of claim I(D)(1) is without merit. The record demonstrates that counsel raised these issues at trial.

In another portion of claim I(D)(1), petitioner alleges he was denied the effective assistance of counsel at trial because counsel failed to raise the issue, stated in the second portion of claim I(B), that there is a "presumption" that his second trial for capital murder was the result of prosecutorial vindictiveness because the prosecutor sought a capital murder charge after the petitioner had been successful on appeal.

The Court holds that this portion of claim I(D)(1) fails to satisfy the "prejudice" prong of the two-part test enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984). The record demonstrates that petitioner's indictment for capital murder was obtained after petitioner provided evidence, which had previously

indictment is not jurisdictional and is waived if not raised before trial).

8

been unavailable and which supported the charge. This previously unavailable evidence creates an objective justification in the charging decision and rebuts any presumption of vindictiveness. See United States v. Goodwin, 457 U.S. 368, 374, 376 n.8 (1982); Alabama v. Smith, 490 U.S. 794, 798-799 (1989) (presumption of vindictiveness which arises from an increased sentence on retrial rebutted by objective information justifying the increase). Thus, petitioner has failed to demonstrate that, but for counsel's alleged error, the result of the proceeding would have been different.

In another portion of claim I(D)(1), petitioner alleges he was denied the effective assistance of counsel at trial because counsel failed to raise the issue, stated in claim I(C), that his subsequent trial violated "the collateral estoppel component of the Double Jeopardy Clause" and violated petitioner's right against double jeopardy. The Court holds that this portion of claim I(D)(1) fails to satisfy the "prejudice" prong of the two-part test enunciated in Strickland. The record of petitioner's criminal trial and direct appeal demonstrates that petitioner argued his subsequent trial violated the res judicata and law of the case components of the Double Jeopardy Clause. The factual basis for his argument at trial and on appeal is identical to that which he raises in his petition for writ of habeas corpus. This Court rejected the petitioner's arguments and held that jeopardy had attached only to the capital murder charge specified by the reading of both the indictment and the bill of particulars. Powell II, 267 Va. at 135, 590 S.E.2d at 554. As such, res judicata is not implicated because, in petitioner's first trial, the jury was not charged with determining

9

whether petitioner raped or attempted to rape Stacey Reed and, thus, could not have made a determination of fact on that matter. Thus, petitioner has failed to demonstrate that, but for counsel's alleged error, the result of the proceeding would have been different.

In a portion of claim I(D)(2), petitioner alleges he was denied the effective assistance of counsel because counsel failed to raise on appeal the issues stated in claim I(A) and the first portion of claim I(B). The Court holds that this portion of claim I(D)(2) is without merit. The record demonstrates that counsel raised these issues on appeal. In another portion of claim I(D)(2), petitioner alleges he was denied the effective assistance of counsel because counsel failed to raise on appeal the issues stated in the second portion of claim I(B) and in claim I(C). The Court holds that this portion of claim I(D)(2) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record demonstrates that these issues were not raised at trial. Therefore counsel was reasonable for choosing not to raise claims which would have been barred under Rule 5:25. Further, petitioner has articulated no reason why this Court would have invoked either exception to Rule 5:25 and reached the merits of either issue. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In a portion of claim II(H)(1), petitioner alleges he was denied the effective assistance of counsel at trial because counsel failed to raise the issue, articulated in claim II(A), that the

10

Commonwealth unconstitutionally obtained statements from him on January 30 and 31, 1999 without obtaining a waiver of petitioner's Sixth Amendment right to counsel.  Petitioner claims that his right to counsel had attached because formal criminal proceedings had been initiated against him when a magistrate had issued a warrant for his arrest.

The Court holds that this portion of claim II(H)(1) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland.  The right to counsel, under the Sixth Amendment of the United States Constitution, exists at the start of "adversar[ial] judicial criminal proceedings."  See United States v. Gouveia, 467 U.S. 180, 189 (1984) ("we have never held that the right to counsel attaches at the time of arrest"); Michigan v. Jackson, 475 U.S. 625, 632 (1986) ("arraignment signals 'the initiation of adversary judicial proceedings' and thus the attachment of the Sixth Amendment").  As no judicial proceedings had been initiated against petitioner at the time he gave his statements, the right to counsel had not attached and, therefore, trial counsel had no grounds to raise a Sixth Amendment claim.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim II(H)(1), petitioner alleges he was denied the effective assistance of counsel at trial because counsel failed to raise the issue, articulated in claim II(B), that his statements on February 4, 1999 were unconstitutionally obtained as

11

they were "fruits of the poisonous tree" as a result of the Commonwealth illegally obtaining his January 30 and 31, 1999 statements.

The Court holds that this portion of claim II(H)(1) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. As petitioner's constitutional right to counsel had not been violated when he provided the previous statements to the police, the statements he made on February 4, 1999 could not have been the "fruit of the poisonous tree." Additionally, petitioner admits that he was advised of his Miranda rights and orally waived those rights before the February 4, 1999 statements were made. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim II(H)(1), petitioner alleges he was denied the effective assistance of counsel at trial because counsel failed to raise the issue, articulated in claim II(C), that his February 4, 1999 statements were "per se invalid" as the police elicited the statements from him without counsel being present even though counsel had been appointed to represent petitioner on February 1, 1999.

The Court holds that this portion of claim II(H)(1) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the transcript of the suppression hearing held during petitioner's first trial, demonstrates that petitioner initiated contact with the police on

12

February 4, 1999. Further, as petitioner admits, he was re-advised of his right to counsel and he knowingly and voluntarily waived that right. Therefore, trial counsel had no viable grounds for raising a Sixth Amendment claim regarding petitioner's February 4, 1999 statements. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim II(H)(1), petitioner alleges he was denied the effective assistance of counsel at trial because counsel failed to raise the issue articulated in claim II(D). The Court holds that this portion of claim II(H)(1) is without merit. The record demonstrates that counsel raised this issue at trial.

In another portion of claim II(H)(1), petitioner alleges he was denied the effective assistance of counsel at trial because counsel failed to raise the issue, articulated in claim II(E), that the Commonwealth violated his right to counsel by scheduling the November 2, 2001 interview before petitioner was formally indicted on December 3, 2001.

The Court holds that this portion of claim II(H)(1) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record demonstrates that petitioner's conversation with the police on November 2, 2001 was part of the investigation into the authenticity of the October 21, 2001 letter which petitioner had sent to the Commonwealth's Attorney. Armed with the evidence provided by the petitioner in the letter and in petitioner's November 2, 2001 conversation with police

13

officers, the Commonwealth's Attorney sought and obtained the indictment for capital murder. Petitioner offers no evidence to support his claim that the Commonwealth actively delayed seeking an indictment in order to circumvent his Sixth Amendment right to counsel. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim II(H)(1), petitioner alleges he was denied the effective assistance of counsel at trial because counsel failed to raise the issue, articulated in claim II(F), that the Commonwealth's Attorney's Office "unconstitutionally and unethically" communicated to him through the police interview on November 2, 2001 without the consent of the attorney who had represented petitioner at his first trial. Petitioner contends that the actions of the Commonwealth's Attorney's Office violated Rules of Professional Conduct 4.2 and 5.3, interfered with his relationship with counsel, and violated his right to counsel because the Commonwealth knew petitioner was still represented by his previous counsel on November 2, 2001.

The Court holds that this portion of claim II(H)(1) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. In Powell II, this Court "determined that the crime for which [petitioner] was tried and convicted in the present case was a separate offense from those for which he had been previously convicted. [Petitioner] had not been formally charged with that offense when he was interviewed on November 2, 2001, and,

14

thus, he was not entitled to have his counsel from his prior trial present during that interview." 267 Va. at 142, 590 S.E.2d at 558. As petitioner's right to counsel had not attached to the particular crime being investigated and for which petitioner was charged and convicted, it was not impacted by the alleged actions of the Commonwealth's Attorney's Office and an objection on this basis would have been frivolous. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim II(H)(1), petitioner alleges he was denied the effective assistance of counsel because counsel failed to raise the issue, articulated in a portion of claim II(G), that his Fourth and Fifth Amendment rights were violated as petitioner's waiver of his <u>Miranda</u> rights on November 2, 2001 was involuntarily given because petitioner was allegedly under the influence of two mood-altering drugs, Atarax and Depakote.

The Court holds that this portion of claim II(H)(1) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in <u>Strickland</u>. The record, including the motion to suppress, the transcript of petitioner's November 2, 2001 statement to police, and the transcript of the motion to suppress hearing, demonstrates that petitioner voluntarily and knowingly waived his <u>Miranda</u> rights. Although petitioner was taking Depakote and Atarax, the record demonstrates that petitioner was coherent and able to understand the questions Detective Leonard was asking. Petitioner fails to state what effects Atarax and Depakote had on his ability

15

to voluntarily waive his Miranda rights.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim II(H)(1), petitioner alleges he was denied the effective assistance of counsel because counsel failed to raise the issue, articulated in another portion of claim II(G), that his Fourth and Fifth Amendment rights were violated, as petitioner's waiver of his Miranda rights on November 2, 2001 was involuntarily given because Detective Leonard violated his promise not to discuss the murder during the interview by asking petitioner questions about the murder.

The Court holds that this portion of claim II(H)(1) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland.  The record, including the motion to suppress, the transcript of petitioner's November 2, 2001 statement to police, and the transcript of the motion to suppress hearing, demonstrates that petitioner voluntarily and knowingly waived his Miranda rights.  Petitioner signed the waiver form and initialed that no promises had been made to him and the record demonstrates that petitioner was informed that he had the right to stop answering questions at any time.  Further, the record, including the transcripts from the motion to suppress hearing, demonstrates that petitioner never invoked his right to silence or his right to counsel, and, therefore, there was no basis upon which counsel could have raised the issue.  Thus, petitioner has failed to demonstrate

that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In a portion of claim II(H)(2), petitioner alleges he was denied the effective assistance of appellate counsel because counsel failed to raise on appeal the issues stated in claims II(A), II(B), II(C), II(E), II(F), and II(G).  The Court holds that this portion of claim II(H)(2) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record demonstrates that these issues were not raised at trial. Therefore, counsel was reasonable for choosing not to raise on appeal claims which would have been barred under Rule 5:25. Further, petitioner has articulated no reason why this Court would have invoked either exception to Rule 5:25 and reached the merits of any of these issues.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In another portion of claim II(H)(2), petitioner alleges counsel was ineffective for failing to raise the issue, articulated in claim II(D), that the Commonwealth violated his right to counsel by eliciting incriminating statements from him on November 2, 2001, while petitioner was still represented by the attorney who had been appointed to represent petitioner at his first trial.  The Court holds that this portion of claim II(H)(2) is without merit.  The record demonstrates that counsel raised this issue on appeal.

In a portion of claim III(C)(1), petitioner alleges he was

17

denied the effective assistance of counsel at trial because counsel failed to raise the issue articulated in claim III(A) that the remarks made by the Commonwealth in opening and closing arguments at both the guilt and penalty phases of his trial violated his rights under the Fifth, Eighth, and Fourteenth Amendments as the "remarks vouched for the personal opinions of the prosecutors that [petitioner] deserved the death penalty." Petitioner contends the Commonwealth's Attorney referred to himself in the first person as he informed the jury that the death penalty would be sought in the case and asked the jury to return a sentence of death against petitioner.

The Court holds that this portion of claim III(C)(1) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates that the remarks in question did not vouch for the personal opinion of the Commonwealth's Attorney but rather were based upon the evidence the Commonwealth's Attorney expected to be presented and which had been presented at trial. Therefore, the remarks were not improper and counsel did not act unreasonably for failing to object. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim III(C)(1), petitioner alleges he was denied the effective assistance of counsel at trial because counsel failed to raise the issue, articulated in claim III(B), that remarks made by the Commonwealth's Attorney in the penalty phase of

18

the trial regarding the effect the death penalty has in deterring other people from committing future crimes violated his rights pursuant to the Fifth, Eighth, and Fourteenth Amendments.

The Court holds that this portion of claim III(C)(1) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland.  This Court has previously held that "[w]hile considerations of deterrence should not be the basis for a finding of guilt of the offense, such considerations may be argued in connection with the punishment to be assessed for the crime." Wilkins v. Commonwealth, 253 Va. 156, 157, 482 S.E.2d 837, 838 (1997) (citing Payne v. Commonwealth, 233 Va. 460, 468, 357 S.E.2d 500, 505, cert. denied, 484 U.S. 933 (1987)).  Our review of the record, including the trial transcript, demonstrates that the deterrence argument was raised during the penalty phase of petitioner's trial and, therefore, did not provide counsel with grounds for an objection.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim III(C)(2), petitioner alleges he was denied the effective assistance of counsel on appeal because counsel did not raise the issues articulated in claims III(A) and III(B).  The Court holds that claim III(C)(2) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record demonstrates that these issues were not raised at trial. Therefore, counsel was reasonable for choosing not to raise on appeal claims which would have been barred under Rule 5:25.

19

Further, petitioner has articulated no reason why this Court would have invoked either exception to Rule 5:25 and reached the merits of either issue. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In a portion of claim IV(G)(1), petitioner alleges he was denied the effective assistance of counsel at trial because counsel failed to raise the issue, articulated in claim IV(A), that petitioner was unconstitutionally prosecuted because the indictment against him did not allege either vileness or future dangerousness and neither factor was proven beyond a reasonable doubt at trial.

The Court holds that this portion of claim IV(G)(1) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. There is no constitutional requirement that a capital murder indictment include allegations concerning aggravating factors. Ring v. Arizona, 536 U.S. 584, 597 n. 4 (2002) (noting that the Fourteenth Amendment has not been construed to include the Fifth Amendment right to "presentment or indictment of a Grand Jury"); Apprendi v. New Jersey, 530 U.S. 466, 477 n. 3 (2000). As such, this Court has previously held that counsel is not ineffective for failing to raise this issue. See Morrisette v. Warden, 270 Va. at ___, 613 S.E.2d at 556. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

20

In another portion of claim IV(G)(1), petitioner alleges he was denied the effective assistance of counsel because counsel failed to raise the issue, articulated in claim IV(B), that the Commonwealth was collaterally estopped from presenting the issue of future dangerousness at his second trial because the jury at petitioner's first trial returned a finding only of vileness. Petitioner contends that the jury at petitioner's first trial returned a finding only of vileness after being informed that it could find either, both, or neither aggravating factor, and, therefore, that the future dangerousness issue had been determined in his favor at the end of the first trial.

The Court holds that this portion of claim IV(G)(1) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Collateral estoppel does not apply in petitioner's case because petitioner was being tried for a different crime. The determination of future dangerousness depends in part on and, as this Court has previously held, may be based solely on "the circumstances surrounding the commission of the offense of which he is accused." See Code § 19.2-264.4(C); Murphy v. Commonwealth, 246 Va. 136, 144, 431 S.E.2d 48, 53, cert. denied 510 U.S. 928 (1993). The evidence at petitioner's second trial, including petitioner's attempted rape of Stacey Reed and letters written by petitioner while in prison following his first trial, was different than that which a jury considered in petitioner's first trial. Therefore, the issue of collateral estoppel was not implicated because the jury at petitioner's second trial was asked to determine an issue that was neither considered nor available at

21

the previous trial.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim IV(G)(1), petitioner alleges he was denied the effective assistance of counsel at trial because counsel failed to raise the issue articulated in claim IV(C).  The Court holds that this portion of claim IV(G)(1) is without merit.  The record demonstrates that counsel raised this issue at trial.

In another portion of claim IV(G)(1), petitioner alleges he was denied the effective assistance of counsel at trial because counsel failed to raise the issue, articulated in claim IV(D), that his constitutional rights were violated by the trial court's vague future dangerousness jury instruction.  The instruction stated that the jury had to find, beyond a reasonable doubt, that ". . . there is a probability that he would commit criminal acts of violence that would constitute a continuing serious threat to society."  Petitioner claims that the juxtaposition of "beyond a reasonable doubt" and "probability" made this instruction vague as one cannot find a probability beyond a reasonable doubt.

The Court holds that this portion of claim IV(G)(1) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland.  This Court has already held that "the word, 'probability,' in the statutory context in which it is used, is not ambiguous . . . [t]herefore, the "future dangerousness" predicate is not unconstitutionally vague."  Mickens v. Commonwealth, 247 Va. 395, 403, 442 S.E.2d 678, 684, vacated on

other grounds, 513 U.S. 922 (1994).  The instruction petitioner complains of followed the statute, as approved by this Court, and therefore counsel was not unreasonable for failing to raise the objection.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim IV(G)(1), petitioner alleges he was denied the effective assistance of counsel at trial because counsel failed to raise the issue, articulated in claim IV(E), that the future dangerousness jury instruction unconstitutionally "relieved the Commonwealth of its burden to prove every element beyond a reasonable doubt" because it told the jury that it only had to find a "probability" of future dangerousness.

The Court holds that this portion of claim IV(G)(1) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland.  Counsel is not unreasonable for failing to object to jury instructions that follow the statute and have previously been approved by this Court.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim IV(G)(1), petitioner alleges he was denied the effective assistance of counsel at trial because counsel failed to raise the issue, articulated in claim IV(F), that his due process rights and right to a reliable sentencing proceeding were

23

violated because the future dangerousness aggravating factor excludes consideration of petitioner's life in prison.

The Court holds that this portion of claim IV(G)(1) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. This Court has previously held that

> a determination of future dangerousness revolves around an individual defendant and a specific crime. Evidence regarding the general nature of prison life in a maximum security facility is not relevant to that inquiry, even when offered in rebuttal to evidence of future dangerousness such as that presented in this case.

Schmitt v. Commonwealth, 262 Va. 127, 146, 547 S.E.2d 186, 199-200 (2001), cert. denied, 534 U.S. 1094 (2002) (citing Burns v. Commonwealth, 261 Va. 307, 339-40, 541 S.E.2d 872, 893 (2001), cert. denied 534 U.S. 1043 (2001)). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In a portion of claim IV(G)(2), petitioner alleges he was denied the effective assistance of appellate counsel because counsel failed to raise on appeal the issues stated in claims IV(A), IV(B), IV(D), IV(E), and IV(F). The Court holds that these portions of claim IV(G)(2) satisfy neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record demonstrates that these issues were not raised at trial. Therefore, counsel was reasonable for choosing not to raise on appeal claims which would have been barred under Rule 5:25. Further, petitioner has articulated no reason why this Court would have invoked either

24

exception to Rule 5:25 and reached the merits of either issue. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In another portion of claim IV(G)(2), petitioner alleges he was denied the effective assistance of counsel on appeal because counsel failed to raise the issue articulated in claim IV(C). The Court holds that this portion of claim IV(G)(2) is without merit. The record demonstrates counsel raised this issue on appeal.

In claim V(B)(1), petitioner alleges he was denied the effective assistance of counsel at trial because counsel failed to raise the issues, articulated in claim V(A), that his right to due process, his right to be able to participate in his trial, and his right to "heightened reliability" in his trial were violated by the medication administered to him in prison before trial and the stun belt he wore at trial. Petitioner claims that the combination of medication he was on, including Depakote, Paxil and Zoloft, caused him to appear emotionless and expressionless during trial. Petitioner claims that he was never found to be a security threat and that the stun belt limited his communication with counsel, distracted him during trial, and prejudiced him before the jury.

The Court holds that claim V(B)(1) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Petitioner provides no evidence that he was involuntarily medicated or that the medication he was taking prior to and during the trial was the reason he appeared "cold,

25

expressionless, and remorseless during the trial." Additionally, petitioner is unable to demonstrate prejudice because, as was the case in Lenz v. Warden, 265 Va. 373, 380, 579 S.E.2d 194, 198 (2003), there is "nothing in the record that indicates the jury observed a stun belt on petitioner during the trial." Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim V(B)(2), petitioner alleges he was denied the effective assistance of appellate counsel because counsel failed to raise on appeal the issues stated in claim V(A). The Court holds that claim V(B)(2) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record demonstrates that these issues were not raised at trial. Therefore, counsel was reasonable for choosing not to raise on appeal claims which would have been barred under Rule 5:25. Further, petitioner has articulated no reason why this Court would have invoked either exception to Rule 5:25 and reached the merits of either issue. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In a portion of claim VI(E)(1), petitioner alleges he was denied the effective assistance of counsel at trial because counsel failed to raise the issues articulated in claim VI(A) that his rights to due process and a reliable sentencing hearing were

26

violated when the Commonwealth knowingly introduced Exhibit 51 as evidence of his criminal history at the penalty phase of the trial. Petitioner claims that the Commonwealth falsely stated that Exhibit 51 was a certified copy of his criminal history, when it was neither certified nor a copy of his criminal record. Further, according to petitioner, the exhibit contained false and misleading information, including, inter alia, information that petitioner had been found guilty of capital murder when that conviction had been reversed by this Court and later nolle prossed and that charges for felony larceny and statutory burglary had been nolle prossed when the charges had actually been dismissed.

The Court holds that this portion of claim VI(E)(1) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Petitioner has failed to demonstrate what effect, if any, Exhibit 51 had on the jury. The record, including the trial transcript, demonstrates that while Exhibit 51 indicated that petitioner had previously been found guilty of capital murder, the jury was already aware of this information. Petitioner's own letters to the Commonwealth's Attorney, which had been introduced at trial, indicated that petitioner was on "death row" after having already been found guilty of capital murder. When Exhibit 51 was introduced, the Commonwealth mentioned only petitioner's prior convictions and did not say anything about the capital murder conviction or about any of the charges for which petitioner was not convicted. The Commonwealth did not mention the exhibit again during the presentation of the evidence or during argument. The Commonwealth's argument that petitioner deserved the

27

death penalty was based not on petitioner's criminal history, but on the killing of Stacey Reed, the letters petitioner wrote after Stacey Reed's murder, and petitioner's racist attitudes. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim VI(E)(1), petitioner alleges he was denied the effective assistance of counsel at trial because counsel failed to raise the issue, articulated in claim VI(B), that the Commonwealth failed to turn over exculpatory information by not informing petitioner that "some of the entries on Commonwealth Exhibit 51 were false and misleading." Petitioner claims that the Commonwealth's actions violated his due process rights.

The Court holds that this portion of claim VI(E)(1) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record demonstrates that on December 23, 2002, the Commonwealth provided petitioner's counsel with a copy of the printout later identified as Exhibit 51. Petitioner's knowledge regarding his own criminal record is as extensive, if not more so, as the Commonwealth's. The inaccuracies in the printout, therefore, were before petitioner prior to trial and the Commonwealth did not violate its duty to disclose exculpatory evidence pursuant to Brady v. Maryland, 373 U.S. 83 (1963). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding

28

would have been different.

In another portion of claim VI(E)(1), petitioner alleges he was denied the effective assistance of counsel at trial because counsel failed to raise the issue, articulated in a portion of claim VI(C), that the Commonwealth violated Code §§ 19.2-295.1, -264.2, and -264.4 because Exhibit 51 was not a "record of conviction" and showed charges which had been either nolle prossed or for which petitioner was found not guilty. Petitioner claims that the introduction of Exhibit 51 "falsely led the jury to believe that [petitioner] had a much more serious criminal record than he did" when deciding future dangerousness.

The Court holds that this portion of claim VI(E)(1) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript and the exhibits, demonstrates that the jury was already aware that petitioner had previously been found guilty of capital murder. Petitioner's own letters to the Commonwealth's Attorney, which had been introduced at trial, indicated that petitioner had been on "death row" after having been found guilty of capital murder. When Exhibit 51 was introduced, the Commonwealth mentioned only petitioner's prior convictions, did not mention the previous capital murder conviction or any of the charges for which petitioner was not convicted. Finally, the Commonwealth focused the jury's determination for a sentence of death not on petitioner's criminal history, but rather on the killing of Stacey Reed, the letters petitioner wrote while he was incarcerated, and how petitioner's racist attitudes showed him to be capable of violence. Thus,

petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim VI(E)(1), petitioner alleges he was denied the effective assistance of counsel at trial because counsel failed to raise the issue, articulated in another portion of claim VI(C), that the Commonwealth violated Code § 19.2-264.3:2 because the Commonwealth failed to give notice of its intent to present evidence of unadjudicated criminal conduct. Exhibit 51 contained information regarding criminal charges that had been either nolle prossed or of which petitioner had been found not guilty.

The Court holds that this portion of claim VI(E)(1) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates that the Commonwealth complied with Code § 19.2-264:3.2 as counsel acknowledged that he had received the document as required. Therefore, any objection counsel would have made on this issue would have been frivolous. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim VI(E)(1), petitioner alleges he was denied the effective assistance of counsel at trial because counsel failed to raise the issue, articulated in claim VI(D), that the Commonwealth violated his Sixth Amendment rights when it introduced

30

Exhibit 51 because there was no "foundational testimony as to the personal knowledge of the record-keeper, the regularity of its preparation, the reliance on the records, or any other circumstance showing trustworthiness." The Court holds that this portion of claim VI(E)(1) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Petitioner has failed to establish that had counsel objected, the Commonwealth would not have been able to provide the appropriate foundation or that Exhibit 51 would have been ruled inadmissible. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that, but for counsel's alleged errors, the jury would not have considered Exhibit 51 and the result of the proceeding would have been different.

In claim VI(E)(2), petitioner alleges he was denied the effective assistance of appellate counsel because counsel failed to raise on appeal the issues stated in claims VI(A), VI(B), VI(C), and VI(D). The Court holds that claim VI(E)(2) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record demonstrates that these issues were not raised at trial. Therefore, counsel was reasonable for choosing not to raise on appeal claims which would have been barred under Rule 5:25. Further, petitioner has articulated no reason why this Court would have invoked either exception to Rule 5:25 and reached the merits of either issue. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

31

In claim VI(F), petitioner alleges he was denied the effective assistance of counsel because counsel failed to have the charges listed on Exhibit 51, which had been nolle prossed or dismissed, expunged pursuant to Code § 19.2-392.2. Petitioner claims that the inclusion of these charges in a capital sentencing proceeding constitutes a "manifest injustice" and that the charges were eligible for expungement under the statute.

The Court holds that claim VI(F) fails to satisfy the "prejudice" prong of the two-part test enunciated in <u>Strickland</u>. Petitioner fails to show that any motion for the expungement of his record would have succeeded. Additionally, petitioner has failed to show that a "manifest injustice" occurred because the information he now complains of was listed in Exhibit 51. When Exhibit 51 was introduced, the Commonwealth mentioned only petitioner's prior convictions and did not say anything about the capital murder conviction or about any of the charges where petitioner was not convicted. Exhibit 51 clearly identifies the disposition of each charge and thus, the fact that some charges were nolle prossed or dismissed was before the jury. Finally, the Commonwealth focused the jury's determination for a sentence of death not on petitioner's criminal history, but rather on the killing of Stacey Reed, the letters petitioner wrote while he was incarcerated, and how petitioner's racist attitudes showed him to be capable of violence. Thus, petitioner has failed to demonstrate that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim VI(G), petitioner alleges he was denied the effective

32

assistance of counsel because appellate counsel in petitioner's first trial failed to file a petition for writ of habeas corpus challenging the convictions that arose from the first trial.  The Court rejects claim VI(G) because there is no constitutional right to counsel in seeking habeas relief.  Howard v. Warden, 232 Va. 16, 19, 348 S.E.2d 211, 213 (1986).

In a portion of claim VII(C)(1), petitioner alleges he was denied the effective assistance of counsel at trial because counsel failed to raise the issue, articulated in claim VII(A), that his constitutional rights to freedom of speech, freedom of association, due process and "to a reliable individualized sentencing determination" were violated by the Commonwealth's introduction of racist statements and documents which linked petitioner to certain groups and "broad ideas."

The Court holds that this portion of claim VII(C)(1) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland.  Petitioner's racist beliefs and writings were a significant and relevant part of the Commonwealth's case because they were evidence of petitioner's motivation for killing Stacey Reed.  This evidence was also properly introduced at sentencing to show that petitioner was a dangerous person.  Further, petitioner provides no evidentiary support for his speculation that the evidence "tended to inflame the jury by linking [petitioner] to certain abstract beliefs" and "caused the jury to sentence [petitioner] for his abstract beliefs."  Petitioner does not allege that had counsel objected this evidence would have been ruled inadmissible and the jury's determination would have been different.

33

Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim VII(C)(1), petitioner alleges he was denied the effective assistance of counsel at trial because counsel failed to raise the issue, articulated in claim VII(B), that the Commonwealth violated his right to confront and cross-examine witnesses when it introduced certificates of analysis in an attempt to authenticate several letters allegedly written by petitioner. Petitioner claims that the certificates of analysis were testimonial in nature and without them the Commonwealth could not have attributed the letters to him.

The Court holds that this portion of claim VII(C)(1) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the certificates of analysis, show that the Commonwealth complied with the requirements of Code § 19.2-187 as the certificates were attested to by the scientists who performed the handwriting analysis and, therefore, the scientists were not required to appear at trial. Additionally, the evidence at trial demonstrates that petitioner admitted to the police that he wrote the letters. Thus, petitioner has failed to demonstrate that counsel's performance was deficient. Further, petitioner claims only that counsel's alleged errors "had a substantial and injurious effect on [petitioner's] trial" but does not claim that, had counsel objected, the letters would have been ruled inadmissible or the result of the proceeding would have been

34

different.

In a portion of claim VII(C)(2), petitioner alleges he was denied the effective assistance of counsel on appeal because counsel did not raise the issues articulated in claims VII(A) and VII(B). The Court holds that this portion of claim VII(C)(2) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record demonstrates that these issues were not raised at trial. Therefore, counsel was reasonable for choosing not to raise on appeal claims which would have been barred under Rule 5:25. Further, petitioner has articulated no reason why this Court would have invoked either exception to Rule 5:25 and reached the merits of either issue. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In claim VIII(A), petitioner alleges he was denied the effective assistance of counsel during the penalty phase because counsel failed to properly investigate petitioner's background in order to rebut the Commonwealth's claim that petitioner had racist beliefs and that petitioner tortured animals. Petitioner alleges that had counsel conducted a proper investigation he would have discovered that petitioner had once shared a cigarette with a "black male;" that petitioner was known to make references to Satan in order "to keep others at a safe distance" and to say things in order to shock people, to gain acceptance and to garner attention to himself; and that petitioner "wore racism like fashionable clothing"

in order to "gain acceptance from certain groups." Petitioner claims that counsel also would have discovered that he had lived without any racial issues in environments where 75% of the occupants were black; had "had good friends who were black;" was not aggressive towards his cousin's black boyfriend; that he told stories about torturing animals to a classmate who had never seen petitioner abuse any animals and did not believe the stories; and that petitioner had acted nice to cats and dogs that belonged to friends and family.

The Court holds that claim VIII(A) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The evidence of petitioner's character and demeanor, which he argues should have been presented, would have been damaging because evidence existed that petitioner had admitted to the police that he was a racist and had tortured animals and because the affidavits supplied by petitioner also demonstrate that petitioner was known to make racist statements and tell stories about abusing animals. None of the affidavits establish that petitioner was either not racist or not abusive to animals. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim VIII(B), petitioner alleges he was denied the effective assistance of counsel because counsel failed to rebut the Commonwealth's claim that petitioner had no remorse because counsel did not properly investigate petitioner's background, interview

36

relevant witnesses, or review the records in the possession of petitioner's prior counsel. Petitioner alleges that counsel would have discovered that petitioner had cried during his January 30, 1999 police interview and stated that he wanted to tell Stacey Reed's parents he was sorry; that petitioner wanted to write a letter to Stacey Reed's family; that petitioner wanted to trade his life for Stacey's; that petitioner wanted to apologize to Kristie Reed; that petitioner broke down and cried during his first trial and that a probation officer had noted that petitioner was "confused and sorry about committing the crime."

The Court holds that claim VIII(B) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record demonstrates that there was overwhelming evidence that petitioner lacked remorse. Petitioner wrote letters to the Commonwealth's Attorney in 2001, in which he taunted the Commonwealth's Attorney, admitted to stabbing Stacey Reed and then "stomping on her throat," and admitted to drinking iced tea and smoking a cigarette after killing her, but in which he never expressed remorse. Petitioner also stated he wanted Stacey Reed's parents to be ready to "relive it all again because if I have to suffer for the next 50 or 60 years or however long then they can suffer the torment of reliving what happened." Additionally, petitioner sent a letter to Stacey Reed's parents two years after the murder in which he compared Stacey Reed to pictures of a topless model he included with the letter but did not express remorse. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability

37

that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim VIII(C), petitioner alleges he was denied the effective assistance of counsel because counsel failed to rebut the Commonwealth's claim that petitioner had above average intelligence by failing to investigate his background, interview relevant witnesses, or review the records in the possession of petitioner's prior counsel. Petitioner contends he had a full-scale IQ score of 102 in 1991 which placed him at the 54th percentile; that he had a full-scale IQ of 87 in 1993; that experts had opined that petitioner's intelligence was "average or below," and that he was capable of functioning in the average range despite low average range IQ scores.

The Court holds that claim VIII(C) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in <u>Strickland</u>. The record demonstrates that at trial, petitioner's own expert testified on cross-examination that petitioner's IQ was "within the average range of intelligence." The reports cited by petitioner demonstrated that he was considered to have average intelligence with psychologist William Brock commenting that petitioner's intelligence may not be indicative of his IQ scores and psychologist Shayne Weir commenting that petitioner's intelligence was "probably brighter" than petitioner's IQ score of 102. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

38

In claim IX(1), petitioner alleges that he was denied the effective assistance of counsel during the penalty phase of his trial because counsel failed to prepare and present "a compelling mitigation case." Petitioner claims that counsel presented "weak testimonial evidence" and no documentary evidence. In support of this claim, petitioner submits affidavits from his mother, Cynthia Powell, and one brother, Matthew Powell. Petitioner contends that counsel met only once, briefly, with Matthew Powell, and only asked him whether petitioner's father had been abusive, and that counsel did not prepare Cynthia Powell to testify. Further, petitioner has submitted the affidavit of William Stejsall, a psychologist who testified on petitioner's behalf at trial. Dr. Stejsall states that trial counsel deviated from the planned presentation of Dr. Stejsall's testimony and the jury never heard a large part of Dr. Stejsall's findings concerning the factors outside of petitioner's control during his adolescence which led to petitioner developing "a self-destructive and antisocial adaptation to life."

The Court holds that claim IX(1) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates that trial counsel called seven witnesses on petitioner's behalf, including Matthew and Cynthia Powell, who discussed various aspects of petitioner's upbringing and childhood. The jury heard evidence that petitioner's father was abusive and had a drinking problem; petitioner's parents were incapable of controlling petitioner; and at one point, petitioner's parents temporarily relinquished custody of petitioner to the Department of

39

Social Services.  The jury was also informed that petitioner's social worker had recommended intensive family therapy after petitioner returned home and a juvenile court psychologist, who evaluated petitioner in late 1993, recommended that petitioner be placed in a long-term treatment facility for at least six months.

Further, at trial, Dr. Stejsall testified that, as a result of his home life, petitioner's behavioral and mental health issues were neglected and he received a variety of treatments with mixed results and at various stages of his life petitioner received no treatment at all.  Dr. Stejsall opined that petitioner developed behaviors described as oppositional defiant disorder, attention deficit hyperactivity disorder, conduct disorder and serious depression which, at times, resulted in petitioner becoming suicidal and engaging in self-mutilation.  Dr. Stejsall also testified that petitioner had no "serious disciplinary infractions" while incarcerated for Stacey Reed's murder because petitioner had been on medications and was receiving psychiatric care.  Petitioner fails to allege what additional information Matthew and Cynthia Powell would have provided had counsel interviewed them more thoroughly or had better prepared them or how additional testimony from Dr. Stejsall would have affected the trial.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim IX(2), petitioner alleges that he was denied the effective assistance of counsel because counsel failed to prepare and present "a compelling mitigation case" regarding the "toxic

environment in which [he] grew up."  Petitioner points to the following in support of his claim:  a 1991 family assessment which described his home life; the reports from a probation officer documenting petitioner's father's abuse; petitioner's mother's passivity; and the officer's failed attempts to obtain intervention for petitioner; a 1993 mental status evaluation which documented the tension between petitioner and his father; and the sexual assault of petitioner when he was seventeen years old.

The Court holds that claim IX(2) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland.  The record, including the trial transcript, demonstrates that counsel presented testimony from numerous witnesses regarding the abusive relationship between petitioner and his father.  Dr. Stejsall testified that petitioner was raised in a "toxic" environment and that a severe beating by a large group of young men while petitioner was confined in a juvenile detention facility and the sexual assault upon petitioner when petitioner was seventeen worsened the effects of petitioner's mental health problems.  Petitioner has failed to assert how the information he alleges counsel should have presented is not cumulative in nature or how it would have affected the proceedings.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim IX(3), petitioner alleges that he was denied the effective assistance of counsel because counsel failed to

41

investigate, review records, interview witnesses, or prepare and present "a compelling mitigation case" regarding his psychological problems.  Petitioner cites a 1991 psychological evaluation, reports from the Prince William County Public School Special Education Department and the city of Manassas Public Schools Eligibility Committee, and psychological evaluations of petitioner performed in 1993 and 1995 in support of his claim.

The Court holds that claim IX(3) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland.  The record, including the trial transcript, demonstrates that Dr. Stejsall, who was initially appointed to evaluate petitioner at his first trial and who re-evaluated petitioner in preparation for his second trial, conducted his initial evaluation of petitioner based upon a review of petitioner's "psychological evaluations," "all of the medical and mental-health records that have ever been written or generated in connection with [petitioner]" including "three psychiatric hospitalizations" and petitioner's school records including the records of "his eligibility and programming as a special education student as a seriously, emotionally disturbed student."  Because Dr. Stejsall based his opinion on his review of these materials, which are the same materials petitioner claims counsel failed to review, counsel acted properly by relying on Dr. Stejsall's expert opinion regarding petitioner's psychological problems.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been

42

different.

In claim IX(4), petitioner alleges that he was denied the effective assistance of counsel because counsel failed to prepare and present "a compelling mitigation case" regarding the obstacles, caused by petitioner's family, to petitioner's treatment. In support of his claim, petitioner points to evidence of his father's refusal to participate in court-ordered counseling and to allow petitioner back in the house. Further, petitioner cites evidence that a probation officer believed that the inability of the family to receive appropriate or timely services was preventing petitioner and his family from successfully addressing their problems.

The Court holds that claim IX(4) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Our review of the record, including the trial transcript, demonstrates that the jury was made aware that petitioner's father often did not attend counseling with petitioner and that petitioner often did not receive services due to money and family problems and the lack of available organizations willing to work with the family. Dr. Stejsall testified that petitioner's "toxic" home environment prevented petitioner from receiving consistent treatment of his behavioral and mental-health issues. The evidence petitioner presents is cumulative of that presented at trial and petitioner has failed to assert how the use of any of this evidence would have impacted the jury. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

43

In claim IX(5), petitioner alleges that he was denied the effective assistance of counsel because counsel failed to prepare and present "a compelling mitigation case" during the penalty phase of the proceeding regarding the life petitioner was living before the murder of Stacey Reed. Petitioner provides evidence in support of his claim that indicates he was homeless, had lost his friends, had all of his possessions stolen, and had recently broken up with his girlfriend. Petitioner has also presented evidence that he was drinking heavily and taking drugs around that time.

The Court holds that claim IX(5) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the affidavits provided by petitioner and the affidavit of counsel, demonstrates that petitioner was homeless because his family was either afraid he would steal from them or because the children in the home were frightened of him and that petitioner's friends had stopped spending time with him because he would "brag a lot" and was acting "weird" and "clingy" or "jealous" because of the relationship two of the friends had with Stacey Reed. Counsel made a strategic decision not to call any of these people as mitigation witnesses because their testimony would have supported a finding of future dangerousness. Counsel is not ineffective for failing to present evidence that could be "cross-purpose evidence" capable of aggravation as well as mitigation. Lenz v. Warden, 267 Va. 318, 337, 593 S.E.2d 292, 303 (2004); see also Barnes v. Thompson, 58 F.3d 971, 980-81 (4th Cir.), cert. denied, 516 U.S. 972 (1995). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there

44

is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim IX(6), petitioner alleges that he was denied the effective assistance of counsel because counsel failed to prepare and present "a compelling mitigation case" during the penalty phase of the proceeding regarding petitioner's lack of future dangerousness while in prison. Petitioner claims counsel should have presented a 1993 school report, a 1994 juvenile detention home report, and evidence that he had earned his GED while incarcerated in 1995 and had no disciplinary violations while incarcerated awaiting his second trial.

The Court holds that claim IX(6) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates that counsel presented evidence that petitioner did not pose a future danger in prison. Dr. Stejsall informed the jury that, as a result of the medications and psychiatric care petitioner received while incarcerated for Stacey Reed's murder, petitioner had no serious disciplinary infractions while in prison. The Commonwealth's evidence that petitioner posed a future danger, however, was overwhelming. Petitioner admitted that he was a racist; claimed that "everybody that ain't white ... needs to die" and stated that if he had waited until he was old enough to buy a gun he would have "kill[ed] a lot of somebodies." Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding

45

would have been different.

In claim X(B)(1), petitioner alleges he was denied the effective assistance of counsel at trial because counsel failed to raise the issue articulated in claim X(A) that the trial court violated his rights under the Fifth and Fourteenth Amendments as well as under Code § 19.2-298 when it failed to allow petitioner to allocute before he was sentenced.

The Court holds that claim X(B)(1) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. There is no constitutional "right" to an allocution before sentencing. Hill v. United States, 368 U.S. 424, 428 (1962)(deprivation of allocution before sentencing is "an error which is neither jurisdictional nor constitutional"). The record demonstrates that petitioner was prone to making statements detrimental to his case. Further, petitioner has not alleged what he would have said if he had been given the opportunity to address the court or how such a statement would have impacted the sentence he received. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim X(B)(2), petitioner alleges he was denied the effective assistance of counsel on appeal because counsel failed to raise the issue articulated in claim X(A). The Court holds that claim X(B)(2) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record demonstrates that these issues were not raised at trial.

46

Therefore counsel was reasonable for choosing not to raise claims which would have been barred under Rule 5:25.  Further, petitioner has articulated no reason why this Court would have invoked either exception to Rule 5:25 and reached the merits of either issue.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In claim XI, petitioner alleges that various stages of Virginia's post-conviction process are insufficient to protect his constitutional rights.  First, petitioner claims that the statute of limitations for filing a petition for writ of habeas corpus provided him insufficient time to investigate and brief all of his claims.  Second, petitioner claims that the trial court failed to appoint counsel for petitioner's habeas petition within the time period prescribed by Code § 19.2-163.7.  Third, petitioner was refused his applications for the appointment of experts to assist with the preparation of his petition for writ of habeas corpus.  Finally, petitioner claims that his motions for a copy of his record maintained by the Prince William Juvenile and Domestic Relations Court were denied.

The Court holds that the issues raised in claim XI are not cognizable in a petition for a writ of habeas corpus.  "The writ is available only where the release of the prisoner from his immediate detention will follow as a result of an order in his favor.  It is not available to secure a judicial determination of any question which, even if determined in the prisoner's favor, could not affect

the lawfulness of his immediate custody and detention." <u>Virginia Parole Board v. Wilkins</u>, 255 Va. 419, 420–421, 498 S.E.2d 695, 696 (1998).

In claim XII, petitioner alleges his rights under the Sixth, Eighth and Fourteenth Amendments as well as Article I, Sections 8, 9 and 11 of the Constitution of Virginia were violated because the jurors were exposed to an extraneous influence, namely a Bible, during the trial. Petitioner claims that at least one unidentified juror carried a Bible during the trial and specifically referred to it during the penalty phase. The Court holds that the petitioner has failed to allege facts that establish that the jurors were "exposed" to a Bible "during the course of the trial" and, therefore, claim XII is speculative.

Accordingly, the petition is dismissed.

A Copy,

Teste:

Patricia L. Harrington, Clerk

48