UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Bernhard and Senior Judge Humphreys
Argued at Virginia Beach, Virginia


JOHN CLINTON LANDERS

                                            MEMORANDUM OPINION* BY
v.        Record No. 1395-24-1           JUDGE ROBERT J. HUMPHREYS
                                           DECEMBER 2, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
Matthew A. Glassman, Judge

Lauren E. Brice, Assistant Public Defender (Virginia Indigent
Defense Commission, on briefs), for appellant.

Shelly R. James, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General; Suzanne Seidel Richmond, Assistant
Attorney General, on brief), for appellee.


John Clinton Landers appeals his convictions, following a jury trial, for two counts of assault and battery of a law enforcement officer and obstruction of justice. Landers contends that the trial court erred when it prohibited him from disclosing to the jury that his assault and battery charges were felonies. We disagree and affirm the convictions.

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence and regard as true all the credible evidence

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *Cady*, 300 Va. at 329.

At 7:40 p.m. on September 27, 2022, Suffolk Police Officers Charles Lauster and Brandon Pruitt responded to a noise complaint in northern Suffolk.[1] The officers approached Landers in uniform displaying their badges of authority and requested that Landers turn his music down. Landers refused the officers' order, used profanity, and demanded that the officers leave his property. Because of Landers's repeated refusals to comply with his orders, Officer Lauster returned to his vehicle to write a summons.

Officer Pruitt, meanwhile, remained with Landers. Officer Pruitt explained that Landers needed to turn the music down, but Landers became irate and again demanded that the officers leave his property. When Officer Lauster returned, he gave Landers a copy of the summons. Landers put a large "X" on the summons, crumpled it up, and then threw it into the nearby fire. The officers informed Landers that if he did not comply with their orders to turn the music down, he would be arrested. Landers gestured to an unsheathed sword laying across a chair and asked, "you see this sword right here? You know what this means?" before walking toward the loudspeaker.

The officers placed Landers under arrest and asked him to place his hands behind his back. Landers resisted. He swung a closed fist at Officer Pruitt, which Officer Pruitt caught. Landers grabbed and bent Officer Pruitt's fingers as the officer secured his right hand. When Officer Lauster secured Landers's left hand, Landers wrapped his left leg around the officer's leg "trying to take [the officer] down." The officers took Landers to the ground and handcuffed him,

---

[1] Each officer wore a body camera during the incident. The footage was played for the jury.

and Officer Pruitt freed Lauster's leg. Once handcuffed, Landers was medically evaluated before being transported to the magistrate's office.

Before trial, the Commonwealth moved to preclude Landers from "arguing any matter that would encourage jury nullification." Specifically, the Commonwealth asked the trial court to preclude Landers from making: (a) "Any argument that the facts do not rise, in seriousness, to the level of a felony conviction"; (b) "Any argument that refers to the lack of injury received by the officers"; and (c) "Any argument regarding punishment of the offense." Landers asserted that the Commonwealth's request was overly broad and impinged on his due process right to argue reasonable doubt to the jury. He claimed that the felony status of the assault and battery charges was relevant and that the jury had a right to know whether the "ticky tack nature of the assaultive conduct" would result in felony convictions. The trial court disagreed, finding that the felony status of the assault and battery charges was irrelevant and granted the Commonwealth's motion *in limine*.

At the close of all the evidence, the jury convicted Landers of the charges. Landers did not elect jury sentencing. The trial court sentenced him to three years, six months' incarceration, with two years suspended. Landers appeals.

ANALYSIS

Landers argues that the circuit court committed a "structural error" by granting the Commonwealth's motion *in limine* and thereby limiting his rights to assistance of counsel and to a fair trial. For the following reasons we disagree.

Procedurally, "[a] trial court has broad discretion in the supervision of opening statements and closing argument." *Jones v. Commonwealth*, 71 Va. App. 70, 92 (2019) (quoting *O'Dell v. Commonwealth*, 234 Va. 672, 703 (1988)). "[An appellate] court will not interfere with the exercise of this broad discretion unless it affirmatively appears that such discretion has

been abused and that the rights of the complaining litigant have been prejudiced." *King v. Commonwealth*, 77 Va. App. 748, 763 (2023) (quoting *Walls v. Commonwealth*, 38 Va. App. 273, 280, (2002)).

"Code § 19.2-295.1 has bifurcated trials for felonies 'into two distinct phases.'" *Rock v. Commonwealth*, 76 Va. App. 419, 428 n.10. (2023). "During the guilt phase, the [fact finder] weighs the evidence and determines whether the defendant is guilty or innocent." *Ford v. Commonwealth*, 48 Va. App. 262, 268 (2006). "During the penalty phase, the [fact finder] is instructed as to punishment and counsel may make statements and present evidence relevant to the penalty to be imposed." *Id.* at 268-69; Rule 3A:17.1(c), (d), (e), and (f). "This bifurcated procedure promotes 'a punishment appropriate to the circumstances without corrupting the initial determination of guilt or innocence with prejudice.'" *Ford*, 48 Va. App. at 269 (quoting *Daye v. Commonwealth*, 21 Va. App. 688, 691, (1996)).

In *Walls*, we held that a defendant had no right to tell the jury during the guilt phase of his trial that he would face a mandatory minimum sentence of two years if convicted. 38 Va. App. at 276. This was because "determining the appropriate sentence" during the guilt phase was "not relevant" and thus fell "outside the scope of permissible argument in the guilt phase." *Id.* at 281. "[T]he only purpose served by allowing defense counsel to present argument about the mandatory minimum sentence during the *guilt phase* is to encourage the jury to acquit the defendant even though the evidence might prove him guilty." *Id.* at 282.[2]

Landers argues that the trial court erred when it granted the Commonwealth's motion *in limine* preventing him from disclosing the felony status of the assault and battery charges to the jury. He claims that the court's overly broad ruling "was an improper sanitizing of the facts for

---

[2] Unlike in *Walls*, Landers's trial was not bifurcated pursuant to Code § 19.2-295.1. Thus the jury in his case had no role in his sentencing if convicted.

- 4 -

no compelling reason" and prevented him from benefiting from the assistance of counsel. Landers also argues that the court's ruling restricted his opportunity to put on evidence and make an argument in support of his claim of innocence. He further contends that part of determining whether the Commonwealth met its burden of proving each element of the offenses beyond a reasonable doubt included the felony status. This prohibition, he argues, resulted in a structural error that violated his due process rights.

A "structural error" is a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself. As such, it is the constitutional magnitude of the error that defies harmless error review. *Morrisette v. Warden of the Sussex I State Prison*, 270 Va. 188, 188 (2005). However, structural errors have been found "only in a very limited class of cases." *Johnson v. United States*, 520 U.S. 461, 468 (1997); *see Gideon v. Wainwright*, 372 U.S. 335 (1963) (a total deprivation of the right to counsel); *Tumey v. Ohio*, 273 U.S. 510 (1927) (lack of an impartial trial judge); *Vasquez v. Hillery*, 474 U.S. 254 (1986) (unlawful exclusion of grand jurors of defendant's race); *McKaskle v. Wiggins*, 465 U.S. 168 (1984) (the right to self-representation at trial); *Waller v. Georgia*, 467 U.S. 39 (1984) (the right to a public trial); *Sullivan v. Louisiana*, 508 U.S. 275 (1993) (erroneous reasonable-doubt instruction to jury).

However, procedural limitations and relevance determinations on matters raised by counsel in opening statements or closing arguments do not rise to the level of constitutional import and are not structural in nature. Thus, even if erroneous, they are subject to a harmless error analysis.

"The crime of assault and the crime of battery are independent criminal acts, although they are linked in Code § 18.2-57." *Parish v. Commonwealth*, 56 Va. App. 324, 329 (2010). "To sustain a conviction for assault, the Commonwealth must prove 'an attempt or offer, with

force and violence, to do some bodily hurt to another.'" *Id.* (quoting *Adams v. Commonwealth*, 33 Va. App. 463, 468 (2000)). "To sustain a conviction for battery, the Commonwealth must prove a 'wil[l]ful or unlawful touching' of another." *Id.* at 330 (alteration in original) (quoting *Wood v. Commonwealth*, 149 Va. 401, 404 (1927)).

Code § 18.2-57(C) provides that "any person [who] commits an assault or an assault and battery against another knowing or having reason to know that such other person is a . . . law-enforcement officer . . . is guilty of a Class 6 felony." The only distinction between a felony and a misdemeanor is the range of punishment available upon conviction. *See* §§ 18.2-10 and 18.2-11. Thus, the felony or misdemeanor status of an assault and battery charge was not a matter for the jury during Lander's trial as it was not an element of the offense and would not tend to make the existence of a fact constituting an element more or less likely than it would be without the evidence. *See* Rule 2:401. Thus, the status of the charges was irrelevant to a determination of Landers's guilt or innocence. The only conceivable purpose of informing the jury about the felony status of these charges during his trial was "to encourage the jury to acquit [Landers] even though the evidence might prove him guilty." *Walls*, 38 Va. App. at 282. Thus, the trial court did not abuse its discretion in prohibiting Landers from mentioning the felony status of the assault and battery charges to the jury during the guilt phase of his trial.[3]

CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*

---

[3] By finding that the trial court did not err when it granted the Commonwealth's motion *in limine*, we find that the trial court's prohibition was not a structural error as it is not a "defect affecting the framework" of his trial. *Prieto v. Warden of the Sussex I State Prison*, 286 Va. 99, 103 (2010). To the extent that Landers's assignment of error alleges the trial court's prohibition deprived him of the effective assistance of counsel, such arguments are not cognizable on direct appeal and we do not consider them. *See Vay v. Commonwealth*, 67 Va. App. 236, 260 (2017); *Lenz v. Commonwealth*, 261 Va. 451, 460 (2001).